John WALLACE, Plaintiff–Appellant,

v.

Steven TILLEY, Town of Beloit, Russell Paschke, James Olson, Doris Forbes, and Ronald Cooke, Defendants–Appellees.

No. 94–1914.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 7, 1994.

Decided Nov. 28, 1994.

Willie J. Nunnery (argued), Madison, WI, for plaintiff-appellant.

Michael J. Cieslewicz (argued), Kevin A. Christensen, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for Steven Tilley, Russell

Paschke, James Olson, Doris Forbes, Ronald Cooke.

Kevin A. Christensen, Kasdorf, Lewis & Swietlik, Milwaukee, WI, Kenneth Forbeck, Forbeck & Monahan, Beloit, WI, for Town of Beloit.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff, John Wallace ("Wallace"), is now, and at the time of the alleged constitutional violations was, a police officer in the Town of Beloit, Wisconsin. As an officer, he belonged to Teamsters Local Union Number 579, which had a Collective Bargaining Agreement with the Beloit Police Department.

On or about June 1, 1992, Wallace was dispatched to investigate a theft at the home of Dorothy Mae Goodenough ("Goodenough"), a seventy-eight year old resident of Beloit. While investigating the theft, Wallace came to believe that Goodenough needed assistance with her financial affairs. In response to a request from Goodenough, Wallace returned to her house the following day while off-duty and escorted Goodenough to her bank to check on her finances. After meeting with bank officials and examining her accounts, Wallace and Goodenough had lunch and returned to her residence. They then called attorney William Hayes ("Hayes") and set an appointment for June 4 to discuss Goodenough's financial and legal affairs. At the June 4 meeting, Wallace, Goodenough and Hayes discussed these personal and financial matters. Wallace apparently did not report any of these events to any Police Department official.

On June 5, 1992, Police Chief Steven Tilley ("Tilley") contacted Wallace and asked him to file a report on his contacts with Goodenough. Wallace filed this report on June 6.

At approximately the same time, Tilley contacted the Rock County Sheriff's Department and requested a criminal investigation into Wallace's actions. Lieutenant Arthur LeFeber ("LeFeber") conducted the investigation and issued a report, later approved by Rock County Sheriff Joseph Black ("Black").

After receiving this report, Tilley discussed the Goodenough matter with James Olson ("Olson") and Town Supervisor Charles Ankrum ("Ankrum").[1] Prior to Wallace's receiving formal notice of any disciplinary action, Tilley, Ankrum and Olson informally agreed that Wallace should be terminated. On June 18, Wallace received notice of his suspension with pay. The suspension letter also informed Wallace that a hearing relating to the matter was set for June 24, 1992. On June 23, 1992, Wallace was served with an official Notice of Disciplinary Proceedings, outlining the charges against him and setting the meeting time for 8:00 a.m. the following day.

The June 24 meeting was held before the Beloit Town Board ("Board"), which included the defendants Russell Paschke ("Paschke"), Doris Forbes ("Forbes"), Ronald Cooke ("Cooke"), Olson and Ankrum. Wallace attended the meeting with teamsters union representative Brendan Kaiser ("Kaiser") and Town of Beloit Police Department union representative James Driscoll ("Driscoll"). At the meeting, Tilley recommended terminating Wallace for his involvement with Goodenough.[2] Upon conclusion of the hearing, the Board unanimously voted to discharge Wallace.

Wallace immediately filed a grievance with the union pursuant to Article 5 of the Collective Bargaining Agreement. Prior to any arbitration on this matter, the union, on Wallace's behalf, and the Town settled the grievance, resulting in Wallace's reinstatement with full seniority, benefits and lost wages

---

[1]. Tilley also referred the matter to the District Attorney's Office for prosecution. The District Attorney found no criminal law violation.

[2]. Wallace contends that his discharge was motivated by Tilley's political agenda. Wallace argues that he intended to run as a Democratic candidate for Sheriff of Rock County against the incumbent, Sheriff Black. Wallace points to Black's close friendship with Tilley as the impetus behind Wallace's termination.

(except for two months pay).[3] The settlement also expunged any reference to his dismissal from Wallace's employment record.

On May 28, 1993, Wallace filed this action in the United States District Court for the Western District of Wisconsin pursuant to 42 U.S.C. § 1983, alleging deprivations of liberty and property without due process of law. The defendants moved for summary judgment. On March 10, 1994, the Magistrate Judge, in his Report and Recommendations, advised that the court should grant the defendants' motion for summary judgment in all respects as to all defendants. On March 29, 1994, the district court adopted the Magistrate's Report and Recommendations and granted summary judgment for all defendants. This appeal follows.

## I.

■ We review a district court's grant of summary judgment *de novo*. *Vukadinovich v. Bd. of School Trustees of Mich.*, 978 F.2d 403, 408 (7th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993); *Karazanos v. Navistar International Transportation Corp.*, 948 F.2d 332, 334 (7th Cir.1991). We review the record and all reasonable inferences which can be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994).

Wallace first claims that the Board's hearing deprived him of both liberty and property interests without due process of law. He argues that the procedures used by the Board did not comport with procedural due process requirements. Wallace contends that the Board's actions deprived him of a liberty interest due to the damage to his reputation resulting from negative publicity arising out of his termination. He asserts that between the time he was terminated on June 24, 1992, and his subsequent reinstatement, he suffered stigmatization, embarrassment and defamation. Wallace specifically points to several newspaper articles which may have cast his actions in a negative light, and claims that these articles directly affected his candidacy for Sheriff. Wallace also argues that the Board's actions deprived him of his property interest in his job as a police officer without due process of law.

■ In examining these claims, we first must determine whether there was a deprivation of a protected interest. If so, we then decide whether the procedures surrounding the deprivation were constitutionally sufficient. *Forbes v. Trigg*, 976 F.2d at 315. When the government terminates a public employee and makes false or substantially inaccurate public charges or statements that stigmatize the employee, the employee's liberty interests are implicated. *McMath v. City of Gary*, 976 F.2d 1026, 1031–32 (7th Cir.1992). Therefore, we assume, *arguendo*, that Wallace had a constitutionally protected liberty interest. The defendants also do not contest Wallace's property interest in his job in that he was a nonprobationary unionized employee whose employment relationship with the Town was governed by the union's collective bargaining agreement. We thus also assume, *arguendo*, that Wallace was deprived of a property interest.

■ The mere deprivation by state action of a constitutionally protected interest is not in itself unconstitutional. What is unconstitutional is the deprivation of such an interest *without due process of law*. "The Due Process Clause 'is not a guarantee against incor-

---

**3.** Neither the record nor repeated questioning during oral argument provided any evidence that the settlement precluded this action.

rect or ill-advised personnel decisions.' " *Collins v. City of Harker Heights*, —— U.S. ——, ——, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (quoting *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976)); *see also Vukadinovich*, 978 F.2d at 410. For this reason we focus our inquiry on whether Wallace received adequate due process.

■■■ Wallace argues that the Board's procedures were insufficient because he did not receive adequate notice of the hearing, did not have an attorney present at the hearing, and did not have an impartial decision maker. The Supreme Court has held in similar contexts that due process requires both some form of hearing and adequate notice of that hearing. *See Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *Board of Regents of States Colleges, et al. v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) ("where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *Vukadinovich*, 978 F.2d at 410. Due process does not mandate a full evidentiary hearing for all property interests prior to their deprivation.[4] *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261–62, 107 S.Ct. 1740, 1747–48, 95 L.Ed.2d 239 (1987); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Buttitta*, 9 F.3d at 1206; *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991). Due

process is a flexible concept whose procedures depend on the particular circumstances of each case, *see Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Buttitta v. City of Chicago*, 9 F.3d 1198, 1206 (7th Cir.1993), and "requires notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges." *Buttitta*, 9 F.3d at 1206. This Court has followed the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), in determining whether a hearing provided an individual with adequate process. This analysis requires balancing (1) the private interest in retaining employment; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the burdens that additional procedures would entail. *Buttitta*, 9 F.3d at 1206; *Vukadinovich*, 978 F.2d at 410.

■■■ Applying the *Mathews* framework, we hold that both the pre-deprivation hearing and the post-deprivation grievance procedure outlined in Article 5 of the Collective Bargaining Agreement fully satisfied the requirements of due process. Prior to the hearing, Wallace received adequate actual notice of the charges. He was first informed of the action and the hearing date six days before the hearing. This notice included the effective date of Wallace's suspension and the date of the hearing. Copies of this notice were also sent to Wallace's union.[5] At the time of the hearing, Wallace did not object to the adequacy of the notice. Furthermore, in light of the events which occurred between

---

4. Wallace contends that he was entitled to a full evidentiary hearing prior to his termination. He mistakenly relies on *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in which the Supreme Court held that welfare recipients were entitled to a full evidentiary hearing before the state could terminate benefits. *Goldberg* was a narrow holding, limited to cases involving welfare benefits. Justice Brennan, writing for the majority, explicitly noted that "some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." *Goldberg*, 397 U.S. at 263, 90 S.Ct. at 1018. *Goldberg* itself distinguished the welfare benefit

analysis from those cases involving discharged governmental employees, such as Wallace in this case. *Goldberg*, 397 U.S. at 263–64, n. 10, 90 S.Ct. at 1019, n. 10.

5. Wallace's notice stated: "Effective this date 6/18/92 you are hereby suspended from your duties as a Town of Beloit Police Officer. This suspension is with pay. A hearing date of 6/24/92 has been set at which time formal charges will be presented. The time of hearing will be set and you will be notified immediatly [sic]. Hearing Time 8:00 A.M. 6/24/92."

June 5 and June 18, including the formal investigation, Wallace had sufficient knowledge of the purpose and substance of the hearing. Finally, on June 23, 1992, Wallace received his official Notice of Disciplinary Proceedings. This Notice, given pursuant to Article 6, § 6.02 of the Collective Bargaining Agreement, established the date, time, nature and location of the hearing. This Notice specified the charges against Wallace and included LeFeber's investigatory report. Wallace argued that this one day provided insufficient notice. In light of the fact that Wallace had actual notice six days earlier, the Board provided him with adequate due process.

Wallace further argues that the Board did not comply with its established statutory guidelines and authority for conducting town meetings. Specifically, he asserts that the Town Clerk made several technical errors in publishing notice of the meeting. Assuming these allegations to be true, they do not rise to the level of a denial of due process. The denial of state procedures in and of itself does not create inadequate process under the federal constitution. "A violation of state law … is not a denial of due process, even if the state law confers a procedural right." *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir.1993).

Wallace next claims that he was denied due process because his attorney should have been present at the hearing, but was denied the opportunity to attend. Wallace, however, had no right to have counsel present at the disciplinary hearings. *Cf. Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), *quoting Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prison inmates do not have a right to retained or appointed counsel in disciplinary hearings); *Osteen*, 13 F.3d at 225 (a state university student's due process rights were not violated by the absence of counsel in a university disciplinary setting); *Curtis v. Int'l. Alliance of Theatrical Stage Empl.*, 687 F.2d 1024, 1027–28 (7th Cir.1982) (in union disciplinary hearings, the right to a full and fair hearing does not include the right to have counsel present). Even under the Collective Bargaining Agreement, Wallace had no right to have counsel present. Rather, Wallace had the right to have a union representative present—a right of which he in fact took advantage.

Wallace also contends that he was deprived of due process at the pre-termination hearing because the decision was not made by an impartial decision maker. Wallace argues that the deck was stacked against him from the outset because Tilley, Olson and Ankrum had met and discussed the Goodenough incident prior to convening the Board or reviewing any evidence and records. The record indicates that prior to the hearing, Tilley informed Olson of the situation and requested advice on how to proceed. Tilley then contacted Olson and informed him that he intended to recommend to the Board that it fire Wallace. At some point after these conversations, but prior to the hearing, Olson spoke with Ankrum, and decided that he "would probably" support Tilley's termination request. The record, however, does not show that Olson and Ankrum had definitively made up their minds nor that they precluded other disciplinary actions.

Viewing the facts in the light most favorable to Wallace, any prejudice which Olson and Ankrum may have had as a result of conversations with Tilley, is not sufficient as a matter of law to indicate that Wallace did not receive due process. This Court addressed a similar issue in *Harrison v. City of Greenfield, Ind.*, 966 F.2d 315 (7th Cir.1992) (per curiam). In *Harrison*, a police officer, after a disciplinary hearing in front of the Board of Public Works and Safety, was found to have violated police department orders. The police officer, on appeal, argued that the Mayor, a Board member, was prejudiced against him. This Court concluded that the existence of some prejudice in a pre-deprivation hearing is not enough by itself to deprive an individual of due process, especially where post-deprivation remedies are available and adequate. *Harrison*, 966 F.2d at 317.

In addition to the adequate process Wallace received prior to and at his termination hearing, he also received adequate post-termination process. Wallace had avail-

able a complete set of post-termination procedures through Articles 5 and 6 of the police Collective Bargaining Agreement. This Court has explicitly recognized that "a grievance procedure under a collective bargaining agreement can satisfy due process, even when a public employee has been discharged." *Buttitta,* 9 F.3d at 1206, *citing Winston v. United States Postal Service,* 585 F.2d 198, 209–10 (7th Cir.1978). In *Buttitta,* this Court held that due process was satisfied where a police officer had access to a post-deprivation grievance procedure provided for in his collective bargaining agreement.

In the instant case, under the terms of the agreement between the Town of Beloit and the Beloit police union, Wallace had access to both grievance and arbitration procedures. Under the grievance procedures, Wallace had a right to submit a grievance to his union. If Wallace remained unsatisfied with this course of action, he could pursue alternative avenues of redress as provided in the Agreement, including arbitration. Specifically, under the agreement, if Wallace and the defendants could not resolve their differences within 10 days, a neutral arbitrator would hold an evidentiary hearing and issue a final and binding decision on Wallace's grievance. As we have previously held, "[t]his grievance and arbitration procedure adequately satisfies the requirements of due process." *Buttitta,* 9 F.3d at 1206. Wallace and the Town were in fact able to negotiate a settlement. Wallace's record was cleared and his benefits restored. Wallace was apparently satisfied with the process he had received and saw no need for the available arbitration hearing.

## II.

■ Wallace also challenges the district court's refusal to allow Wallace to supplement the record with the deposition of Steven Tilley.[6] Tilley's deposition was taken on January 5, 1994. Wallace took no further action with regard to this deposition until March. Specifically, he did not attempt to file it with the court nor include it in his

response to the defendants' motion for summary judgment. On March 10, 1994, the United States Magistrate Judge, in his Report and Recommendations, advised granting defendants' motion for summary judgment as to all claims and defendants. Four days after this report was issued, on March 14, 1994, Wallace finally filed Tilley's deposition with the court. The court stated:

> The Court has no control over the facts that the parties choose to put into the record either in support of or in opposition to a motion for summary judgment. It must take the facts submitted and apply the law to them. It is not in the interests of justice to allow a party to wait until the Report and Recommendation or Order has been issued and then submit evidence that the party had in its possession but chose not to submit. Doing so would allow parties to undertake trial runs of their motion, adding to the record in bits and pieces depending upon the rulings or recommendation they received.

Wallace then sought through a motion for reconsideration with leave, to supplement the record with an accompanying affidavit of Attorney William Nunnery. This motion was filed along with objections to the Magistrate Judge's Report and Recommendations. On March 18, 1994, the district court denied Wallace's motion to supplement the record.

■ The district court did not abuse its discretion in denying Wallace's motion and did not err in finding that Wallace deliberately delayed his attempts to supplement the record until after the Magistrate Judge's recommendations. Neither Wallace's brief nor his oral argument provided any reason for this delay. Wallace's "wait and see" approach conflicts with the procedure established in the Federal Rules for dealing with unavailable discovery materials. If Wallace needed additional time for discovery to prepare his response to the summary judgment motion, he should have filed an affidavit to that effect pursuant to Federal Rule of Civil Procedure 56(f). The Rule states:

---

6. In his brief, Wallace argues that the deposition supports the proposition that Tilley knew at the time that he made the allegations against Wal-

lace about his misconduct that those statements were untrue.

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such orders as is just.

Fed.R.Civ.P. 56(f). A failure to request a continuance pursuant to Rule 56(f) in order to obtain discovery precludes us from concluding that the district court abused its discretion in ruling on the summary judgment motion. *King v. Cooke,* 26 F.3d 720, 726 (7th Cir.1994) ("when a party does not avail himself of relief under Rule 56(f), it is generally not an abuse of discretion for the district court to rule on the motion for summary judgment"); *Kinney v. Indiana Youth Center,* 950 F.2d 462, 466 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2313, 119 L.Ed.2d 232 (1992).

Furthermore, Wallace has failed to show any prejudice arising from the district court's actions. A mere contention in the absence of any showing of prejudice is not enough to demonstrate that the district court abused its discretion. *See Brown–Bey v. United States,* 720 F.2d 467, 471 (7th Cir.1983). In any event, the admission of this deposition testimony is irrelevant to the principle issue on appeal. Even if Tilley's testimony would have exonerated Wallace, it does not affect the issue of whether Wallace was afforded due process at the pre-termination hearing and grievance procedures.

For the foregoing reasons, the district court's decision is

AFFIRMED.