William STAPLES, Plaintiff–Appellant,

v.

CITY OF MILWAUKEE, et al.,
Defendants–Appellees.

No. 96–3788.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 21, 1997.

Decided April 10, 1998.

William N. Staples (submitted), Milwaukee, WI, for Plaintiff–Appellant.

Grant F. Langley, Jan A. Smokowicz, Tracy Johnson, Office of the City Attorney, Milwaukee, for Defendants–Appellees.

Before FLAUM, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

A few days after William Staples became involved in a fistfight with one of his co-workers in the Bridges and Public Buildings Division of the City of Milwaukee's Department of Public Works ("the DPW"), the City fired him from his job. He brought this case under 42 U.S.C. § 1983 claiming that the City's action deprived him of his constitutional rights to due process and equal protection under the Fourteenth Amendment. In addition, he added a variety of state-law claims against the co-worker. Upon cross-motions for summary judgment, the district court granted judgment for the City with respect to Staples's federal claims and dismissed his state claims. We affirm in part and reverse in part.

The altercation that precipitated Staples's discharge occurred on August 29, 1995, as he and his co-worker Norman Currie were coming to the end of their shift. Currie struck Staples on the head, and the two became embroiled in a fistfight. Other co-workers briefly broke up the fight, but Staples then left the area, fetched two broom handles, and returned to the locker room. There Currie attacked him again, and Staples struck Currie with one of the broom handles. The next day, Currie reported the incident to the supervisor on duty, Louis Black, and later responded to questions from Black, Len Moye, a DPW Custodial Services Manager, and a representative of the Mayor's Security Office. That same day, these investigators asked Staples about the previous night's events; Staples lied and denied knowing anything about the incident.

A couple of days later (presumably Thursday, August 31, or Friday, September 1), Staples received a memorandum informing him that a hearing on an earlier-filed grievance would take place on Tuesday, September 5 (the day after Labor Day). Staples showed up for the meeting around 4:15 p.m., and met Frank Bock, a DPW Personnel Administrator, Thomas Rowe, a Structures and Grounds Management Engineer, and Moye. Bill DiGeorgio, the president of Staples's union, was also invited and present. To Staples's surprise, during the meeting Bock announced, "we are holding a pre-discharge hearing and the police is [sic] outside to escort you from the worksite. I am going to read the allegations of the charges against you and if you want to say anything you can; it is not required, but if you want to you can." Although there is some indication that DiGeorgio at least knew about the Staples-Currie incident before the meeting, Staples

claims (and we accept on summary judgment review) that he had no idea that the September 5 meeting was going to address that incident until the moment that Bock spoke up. The City indirectly confirms Staples's version of the events, in that it claims that it did not give him notice because it was unable to get in touch with him on the Labor Day holiday. (It does not appear to be saying that it tried and failed; it seems to have assumed that it is impossible to reach people on holidays.) Instead, the City says that it notified DiGeorgio (but not Staples himself) some time between 10:30 a.m. and noon on September 5 that the meeting later that day would also be for pretermination purposes.

In response to Bock's statement, Staples requested a postponement of the meeting so that he could obtain evidence, witnesses, confront his accusers, or obtain a copy of the allegations against him. Bock denied the request and proceeded to read the allegations to Staples. At Bock's suggestion, Staples and DiGeorgio stepped outside for a brief private discussion. When they returned, Staples again asked for more time, and Bock again denied the request. At that point, Bock informed Staples that he was recommending Staples's termination and he instructed Staples to call before returning to work to find out if he still had a job.

The next day, Staples telephoned Rowe, who told him that he had been fired. The official reason for the discharge was that Staples had violated City Civil Service Rule XIII, § 5, ¶j, which provides for the termination of employees who behave "offensive[ly] in conduct or language towards the public or towards city officers or employees." Staples appealed his termination to the Milwaukee Civil Service Commission, which heard the appeal on September 19, 1995, and affirmed the Department's action. This suit followed, against the City of Milwaukee, Stephen Adams, Superintendent of Bridges and Public Buildings, Thomas Rowe, Len Moye, and Norman Currie (collectively referred to as "the City").

■ The most important point Staples raises in his *pro se* appeal is whether the pretermination procedures the City used here satisfied the standards of *Cleveland*

*Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The City concedes that Staples had a property interest in his position, because he was a classified civil servant removable only for cause. See *Listenbee v. City of Milwaukee,* 976 F.2d 348, 351 (7th Cir.1992). In *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), the Supreme Court reaffirmed *Loudermill's* holding that:

> a public employee dismissable only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. Stressing that the pretermination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," [470 U.S. at 545–46, 105 S.Ct. at 1495], we held that pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story, *id.* at 546, 105 S.Ct. at 1495.

520 U.S. at ——, 117 S.Ct. at 1811. We must therefore decide whether the procedures given to Staples included the critical three elements identified in *Loudermill* and *Gilbert:* (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell his side of the story.

Even if we assume for the sake of argument that Bock's statements, coupled with the information that Moye and Black had passed along in the earlier interview, were enough to satisfy the "explanation" element, and we assume further that Bock's invitation to Staples to say whatever he wanted was enough to satisfy the third element, we cannot find on this record that Staples received adequate notice that he was involved in a pretermination procedure. We have held before that due process requires the notice of the charges and the hearing to be given in advance of the hearing. *See Wallace v. Tilley,* 41 F.3d 296, 300 (7th Cir.1994); *see also Hartland Sportman's Club, Inc. v. Town of*

*Delafield,* 35 F.3d 1198, 1201 (7th Cir.1994), referring to *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978); *Cosby v. Ward,* 843 F.2d 967, 982 (7th Cir.1988). This does not necessarily mean days or weeks in advance, but even a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges.

The question before us today is whether contemporaneous (rather than advance) notice given during a hearing that was convened for an entirely different purpose satisfies the *Loudermill* requirement. In *Panozzo v. Rhoads,* 905 F.2d 135 (7th Cir. 1990), this court found that written notice received the night before a scheduled hearing was constitutionally sufficient. *Id.* at 139. In passing, the court also referred to three decisions from other circuits, which it read as upholding the adequacy of oral notice received while a hearing is in progress, and it commented that *if* those decisions were correct, then written notice received the night before the hearing was surely unobjectionable. *Id.,* referring to *Riggins v. Board of Regents,* 790 F.2d 707 (8th Cir.1986); *Kelly v. Smith,* 764 F.2d 1412 (11th Cir.1985), *overruled on other grounds, McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994); and *Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985).

In our view, *Riggins, Kelly,* and *Brasslett* did not go so far as to announce an absolute rule that contemporaneous oral notice is always adequate for *Loudermill* purposes. Instead, we agree with the Third Circuit that the plaintiffs in those cases were not arguing that "ineffective notice rendered meaningless their opportunity to respond." *Morton v. Beyer,* 822 F.2d 364, 370 n. 7 (3d Cir.1987). In *Riggins,* the plaintiff was told orally that she was being suspended indefinitely for insubordination, pending a review of the situation and a final decision on her job status. 790 F.2d at 709. At the same time, she was given a copy of a written report that detailed the incident in question. Two days later, and with advance notice of the meeting and its purpose, she met with a university official to review the report. At that meeting, she was allowed to give her version of the incident. About a week later, she was fired. It is plain that this sequence of events was a far cry from the one Staples encountered. It is also clear that *Riggins* itself was not a case in which nothing more than contemporaneous oral notice was given to the employee.

*Kelly* similarly involved several rounds of notice. In that case, Kelly did not respond to an emergency call when he was scheduled to be on "standby time" for his employer, the Utility Department of the City of St. Cloud, Florida. His supervisor asked him why, and Kelly replied that he was not scheduled to work standby time that week and would be unavailable to work standby for the rest of the week. The supervisor informed Kelly that if he did not agree to work standby, then he would be terminated. 764 F.2d at 1413. Kelly persisted in his position and left the worksite. A short time later, Kelly received oral notice of his termination, and a few days later he received written notification that he had been terminated for insubordination and failing to work standby. The court found that Kelly's oral conversation with his supervisor was enough pretermination procedure under *Loudermill. Id.* at 1414–15. Kelly's supervisor told him what the problem was, there was no dispute about the basic facts (*i.e.,* Kelly's unavailability for standby work), and Kelly had an opportunity to respond. There is no hint in the Eleventh Circuit's opinion that Kelly specifically argued that he needed earlier or more complete notice.

Last, we find *Brasslett* different enough from the present case that it does not help us much with Staples's situation. In *Brasslett,* the Fire Chief of Orono, Maine, was discharged for giving an interview with a television station in which he criticized the condition of the fire department's equipment. 761 F.2d at 832 & n. 3. At the town manager's request, Brasslett wrote a formal letter apologizing for the unfavorable publicity his remarks had generated. After that, the Town Council met to discuss both the condition of the equipment and Brasslett's status as fire chief. The Council specifically asked the town manager if he was considering disciplinary action against Brasslett, and the manag-

er replied that he was studying the matter. One day later, the manager met with Brasslett for about an hour. During that meeting, the manager informed Brasslett of possible disciplinary actions that might be taken, including forced resignation or dismissal. At the close of the meeting, the manager told Brasslett that he would be dismissed. Brasslett received a letter the next day outlining the reasons for his dismissal and informing him of his right to invoke the town's grievance procedure. Based on all of this, Brasslett claimed that he had received no pretermination hearing at all—an argument that the First Circuit easily rejected. In fact, the record shows that Brasslett was informed at several points before the one-hour meeting about what was afoot, and the meeting itself was devoted to the controversy that had arisen.

■ In light of the flexibility inherent in the Supreme Court's approach to pretermination hearings under *Loudermill,* we would not want to say that contemporaneous notice at a hearing could never satisfy due process. Whether it does or not will depend on what has taken place before the hearing, on the nature of the violation the employee is charged with, and on the risk of error if the employee does not have some advance notice of the hearing. In our case, not only was Staples unaware that the September 5 hearing was going to be about the fistfight incident, he affirmatively had been told that it was for an entirely different purpose. He had no idea that his job was on the line until Bock informed him that the police were at the door (a rather dramatic gesture, it seems). *Loudermill* makes it clear that the summary procedures that are required prior to termination are for the purpose of guarding against an erroneous deprivation. We cannot say, on the present record, that the procedures Bock followed met that standard. It is worth recalling that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exception." *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). This means that, just as we reject demands for more process in exceptional cases, we also reject arguments that less

process is due for idiosyncratic reasons. The district court therefore should have allowed Staples to go forward with his procedural due process claim.

■ We agree with the district court, however, that Staples's other allegations are without merit. Briefly, Staples claims first that he did not receive a pretermination hearing before an impartial tribunal, because Bock was biased against him. There is no evidence of this; Staples must have something more than the fact that Bock was involved in both the investigation and adjudication of the dispute. See *Panozzo,* 905 F.2d at 140, citing *Withrow v. Larkin,* 421 U.S. 35, 53–54, 95 S.Ct. 1456, 1467–68, 43 L.Ed.2d 712 (1975). It is worth recalling that the pretermination hearing is not a full, trial-type evidentiary hearing. See *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. For the same reason, Staples's argument that he was entitled to an opportunity to present witnesses in his defense, to confront adverse witnesses, and to cross-examine them is wrong. See *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.,* 52 F.3d 623, 628 (7th Cir. 1995). As we noted earlier, once Staples realized that the August 29 incident was being addressed, Bock's statements about the City's position were enough to alert him to that position; thus, we see no due process violation in the thoroughness (or lack thereof) of the statement of reasons for the termination he received.

■ We also agree with the district court that Staples did not adequately allege a violation of equal protection. Recognizing that he cannot show discrimination based on his membership in any group, Staples is arguing that he is a "class-of-one" plaintiff who has been victimized by a wholly arbitrary act. See *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 101 F.3d 1179, 1181 (7th Cir.1996). Other employees, including Currie, Carrie Lewis, and Steve Boyd, had committed assaults in the past, but were not terminated. The City claims that none of these instances involved the use of a weapon, such as the broom handle with which Staples attacked Currie. Staples responds that he would have been able to show the arbitrary

nature of the City's action if the district court had required the City to answer his interrogatories and document requests. We review discovery rulings of this kind, however, for abuse of discretion only, and we see none here.

As Staples has not appealed from the dismissal of his state-law claims, those issues are not before us. We therefore REVERSE the district court's decision granting summary judgment to the City defendants on Staples's due process claim and REMAND for further proceedings consistent with this opinion. We AFFIRM the dismissal of Staples's equal protection claim.