UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 4, 2006
Decided November 7, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1283

| | |
|---|---|
| DENNIS GRIFFIN<br>*Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 04-C-512 |
| ODISE BENNETT and JONATHON DELAGRAVE,<br>*Defendants-Appellees.* | Rudolph T. Randa<br>*Chief Judge.* |

**O R D E R**

Dennis Griffin, a former employee of the Racine County Juvenile Detention Facility, sued both his supervisor and the deputy superintendent of the detention center under 42 U.S.C. § 1983, alleging that his Fourteenth Amendment rights were violated and arguing that the defendants terminated him without providing notice of the charges and a hearing.  The district court granted summary judgment for the defendants finding that Griffin was given sufficient notice and a hearing before his termination.

Griffin was hired in 2001 as a "juvenile detention worker."  Detention workers are public employees and can be fired only for cause.  In January 2004 one of Griffin's co-workers told the deputy superintendent, Jonathon Delagrave, that

Griffin and a juvenile in the center had been using drugs. When Delagrave met with the juvenile, K.T., he admitted to having smoked marijuana with Griffin at an undisclosed location. Delagrave then contacted Griffin's supervisor, Odise Bennett, and the human resources manager, Marta Kultgen; they decided to order that Griffin take a drug test. On January 22, Griffin complied. The test results came back positive for marijuana use. Griffin was placed on administrative leave without pay, but was not notified of this action. The medical review officer informed Griffin on January 23 that his drug test was positive, and that the detention center would contact him regarding his future employment status. According to his deposition testimony, Griffin was aware that he could be disciplined, or even fired because of the positive drug test.

On January 27, Bennett telephoned Griffin and requested a meeting later that morning, stating that Griffin's "job was on the line." Before the meeting, Griffin conferred privately with three union representatives, all of whom later accompanied him to the meeting. Delagrave and Kultgen also attended. Kultgen began the meeting by stating that she had received notice of Griffin's positive test result. Kultgen gave Griffin an opportunity to explain the test results, but he declined to do so. At the end of the meeting, Griffin was terminated.

Griffin asked one of the union representatives whether he had any recourse. The representative told him that he did not, and that his failing of the drug test was a proper ground for termination. Griffin thus decided not to file a grievance challenging his discharge, which was an option under the Racine County public employees' collective bargaining agreement. On February 12 Griffin wrote to the Racine County Executive regarding an unexplained deduction from his paycheck, and his belief that he did not receive a *Loudermill* hearing. Griffin asserted that the grievance procedure did not "supercede [his] rights" under *Loudermill*.

In May 2004, Griffin filed suit under 42 U.S.C. § 1983, alleging that the defendants violated his Fourteenth Amendment due process rights by not giving him a hearing before terminating his employment. The defendants moved for summary judgment, claiming that they gave Griffin an opportunity to challenge or explain the positive test result that led to his firing. After hearing testimony and reviewing the case, the district court granted summary judgment for the defendants, after concluding that Griffin was given a pretermination hearing that was "constitutionally sound" and furthermore that he had the opportunity for a post-termination hearing.

Griffin initially argues that Racine County's pre-termination procedures do not satisfy the requirements of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) and *Staples v. City of Milwaukee*, 142 F.3d 383 (7th Cir. 1998), because he was not given advance written notice of the charges against him. The Court in

*Loudermill* held that a public employee who can be dismissed only for cause must be granted a pre-termination hearing, followed by a more comprehensive post-termination hearing. *Loudermill*, 470 U.S. at 545-46; *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). In *Staples*, this court noted that the critical elements identified in *Loudermill* were (1) oral or written notice of the charges, (2) an explanation of the employer's charges, and (3) an opportunity to tell his side of the story. *Staples*, 142 F.3d at 385.

In this case, although he was not given written notice of the charges, Griffin well knew that the purpose of the January 27 meeting was to discuss his failed drug test. At the meeting, the defendants referred to the drug test and asked Griffin if he had an explanation for the positive results; he replied, "no." Because Griffin was given notice and an opportunity to respond to the charges, the pre-termination procedures were constitutionally sufficient.

Griffin cites *Wallace v. Tilley*, 41 F.3d 296 (7th Cir. 1994), to suggest that due process requires actual written (rather than oral) notice. It is true that the employee in *Wallace* received written notice six days before the hearing, and that the notice included the date of the hearing at which formal charges would be presented. *Id.* at 300 n.5. But, as the law clearly states, written notice of the charges is not required; oral notice alone is sufficient. This court has repeatedly noted *Loudermill's* direction that "[t]he tenured public employee is entitled to oral or written notice of the charges against him." *Lavlani v. Cook County*, 396 F.3d 911, 915 (7th Cir. 2005) (quoting *Loudermill*). To date we have not specified how far in advance an employee must receive notice, but have suggested that contemporaneous notice may suffice if the employee knew that his job was in jeopardy. *See Staples*, 142 F.3d at 387. Here, Griffin received oral notice of the meeting only one hour before it began, but the notice was sufficient because, by his own admission, Griffin was well aware that the meeting was convened to discuss his violation of the County's drug-free policy and how that violation might jeopardize his job.

Griffin further claims that he was "blindsided" at the pre-termination hearing by two additional charges contained in his employee disciplinary report: (1) that he had used drugs in the workplace, and (2) that he had engaged in inappropriate conduct with the juvenile K.T. However, Griffin's disciplinary report contains no reference that a juvenile was involved with Griffin's drug use. Moreover, according to Delagrave's uncontradicted testimony, Griffin's positive drug test was the only relevant factor in the decision to terminate him. Whether he used drugs on the detention center premises or elsewhere was unimportant: Griffin failed the drug test. *Id.* Because Griffin had notice of the charge that he had tested positive for marijuana use, and an opportunity to respond, he received all the process he was due.

Griffin next argues that he was removed from the payroll on January 22, which suggests that he was actually terminated on January 22, several days before the January 27 meeting. If this assertion were true, the defendants would have violated *Loudermill* by not providing Griffin with a pre-termination hearing. But this claim is unsupported by the record. Griffin himself alleged in his complaint that he was terminated on January 27, and the defendants agree. Nothing in the record indicates that he was removed from the payroll on January 22. Griffin was not paid after January 23 because he was placed – without notice – on administrative leave. There are few details in the record regarding his suspension, but his not being paid after January 23 is consistent with his being placed on administrative leave without pay. The district court declined to hear this issue because Griffin's complaint did not allege a lack of due process regarding his suspension. He raised this issue for the first time in his brief opposing the motion for summary judgment. The court rejected this argument as an inappropriate attempt to amend his complaint. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Griffin's argument is not only inaccurate, but also untimely because he did not include it in an amended complaint; thus the claim that he was fired on January 22 cannot be accepted.

Griffin's final argument is that he did not receive post-termination relief because the defendants ignored his February 12 request for a *Loudermill* hearing. Griffin misunderstands *Loudermill's* requirements. In *Loudermill*, the Court noted that its holding rested in part on state law provisions providing for a full post-termination hearing. 470 U.S. at 546; *see Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803 n.8 (7th Cir. 2000) (noting that limited pre-termination procedures are permissible only if full post-termination procedures are available). In this case, Racine County and Griffin's union had a grievance procedure in place for employees to appeal any disciplinary actions taken against them. Griffin testified that he thought he had no grounds to contest his discharge and did not file a grievance, based on a conversation with one of the union representatives. But that Griffin on his own chose not to avail himself of an existing grievance procedure does not alter its availability. Moreover, our precedents do not suggest that public employees are entitled to post-termination relief apart from what is provided for in their collective bargaining agreements. *See, e.g., Wallace*, 41 F.3d at 302 ("This Court has explicitly recognized that 'a grievance procedure under a collective bargaining agreement can satisfy due process, even when a public employee has been discharged.'") (quoting *Buttitta v. City of Chi.*, 9 F.3d 1198, 1206 (7th Cir. 1993)) (quoting *Winston v. United States Postal Serv.*, 585 F.2d 198, 209-10 (7th Cir. 1978).

AFFIRMED.