Antonios CHRISTOU, Plaintiff,

v.

HYATT REGENCY–O'HARE, Defendant.

No. 96 C 2493.

United States District Court, N.D. Illinois, Eastern Division.

March 2, 1998.

Richard S. Reizen, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, P.C., Chicago, IL, for Plaintiff.

Antonios Christou, Indianapolis, IN, pro se.

Peter R. Bulmer, Michael Nicholas Petkovich, Kristen Emma Poplar, Maureen McCann Sreenan, Leah Deborah Seef, Theresa M. Gallion, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Antonios Christou, brought suit against the defendant, Hyatt Regency–O'Hare ("Hyatt"), alleging that Hyatt discriminated against him on the basis of his disability by harassing him, failing to accommodate him, and then terminating him, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Mr. Christou further alleges that Hyatt terminated him in retaliation for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Hyatt now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Hyatt's motion is granted in part and denied in part.

### Background

Mr. Christou worked for Hyatt as a banquet waiter until he was discharged on September 23, 1994. During his tenure at Hyatt, he performed all the duties of a banquet waiter satisfactorily. In accomplishing those tasks, Mr. Christou wore thick prescription glasses.

In the six months prior to Mr. Christou's termination, several comments were made about his vision. Mr. Christou filed an EEOC claim on June 16, 1994, alleging disability harassment, based on some of those comments.

During the spring of 1994, Hyatt was experiencing a rash of theft at the hotel. To tighten security, Hyatt reiterated its employee entrance/exit policy by distributing memorandums on June 27, 1994 and on August 12, 1994. They stated that any employee caught violating the policy faced possible termination. The policy prohibited any employee from entering or exiting the hotel from any door other than the one specifically reserved for employees. Prior to that time, the policy was never enforced.

On September 20, 1994, Mr. Christou was observed exiting the hotel through a banquet room door to take a cigarette break. Mr. Christou was suspended and subsequently discharged on September 23, 1994 for violating the entrance/exit policy.

On November 3, 1994, Mr. Christou applied for Social Security disability benefits. In his application, he stated that he became disabled on September 30, 1994, and that he used to work as a waiter but could no longer perform that job because he was legally blind. His application was approved on November 23, 1994, and Mr. Christou continues to receive Social Security benefits based on that application.[1]

### Summary Judgment

Hyatt advances several arguments, seeking judgment on all of Mr. Christou's claims. I address each below.

### A. "Disability" Under the ADA

To qualify for protection against discrimination under the ADA, Mr. Christou must suffer from a "disability." The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A).[2] EEOC regulations define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). " 'Substantially limits' means that the person is either unable to perform a major life function or is 'significantly restricted as to the condition, manner or duration' under which the individual can perform a particular life function, as compared to the average person in the general population." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir.1996) (quotations omitted).

---

1. Mr. Christou also currently receives income from his employment as a banquet waiter at the Westin Hotel in Indianapolis.

2. The ADA also defines a person as disabled if he has "a record of such [a physical or mental] impairment" or is "regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(B), (C).

Whether or not a person is disabled under the ADA is determined at the time of the discriminatory action. *Id.* at 524. In this case, there is no medical evidence that at the time of the alleged harassment and termination, Mr. Christou was disabled because he was blind. In 1989, Mr. Christou was diagnosed with cone-rod dystrophy, with 20/25 vision in his left eye and 20/400 vision in his right eye. His vision was expected to deteriorate gradually, but he was not restricted in performing anything he needed to do in his everyday life, including driving. Mr. Christou did not seek medical treatment for his vision again until 1996.

At the time Mr. Christou was terminated, he worked as a banquet waiter. His responsibilities included setting tables; cleaning tables when the customers were finished eating; serving food, appetizers, and any beverages including water, coffee, and tea; separating and placing all of the dirty dishes and utensils on a cart, which he brought to the kitchen; and going to the laundry room to get clean towels and tablecloths and then taking them up a flight of stairs to the individual banquet rooms. During his last six months of employment, no duties were taken away from him by his supervisors, nor did he ever request to be relieved of any duties. In fact, Mr. Christou drove to and from his job until he was terminated. Mr. Christou testified that he "always worked like everybody else," and that he had no problems performing his duties as a waiter, and that no one ever complained about his service.

On the other hand, Mr. Christou swears in his affidavit that at the time he was terminated, he could not read and was unable to watch television. There is evidence that before and immediately after he was terminated, he could not read or could not read well. Dean Koretos, the banquet manager, noticed that Mr. Christou had to bring the paper closer than most people to read it. When Mr. Christou filed his social security application, someone had to complete it for him.

In addition, on November 23, 1994, after a medical examination, the Social Security Administration ("SSA") found that Mr. Christou had statutory blindness and qualified for disability benefits. Even though the SSA's definition of disability is different from that of the ADA, *see Weiler,* 101 F.3d at 523–24, it is relevant to determining whether Mr. Christou was in fact disabled at the time of his termination. If Mr. Christou was deemed statutorily blind two months after he was terminated, a reasonable juror could find that he was blind at the time of his termination, and that the blindness substantially limited a major life function. Thus, viewing this evidence in the light most favorable to Mr. Christou, there is a genuine issue of material fact as to whether or not Mr. Christou had a physical impairment that substantially limited his sight.[3]

### B. "Qualified Individual" Under the ADA

Recovery under the ADA also requires Mr. Christou to prove that he is a "qualified individual with a disability," meaning an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. §§ 12111(8), 12112(a). Accordingly, a person unable to perform the job is not intended to be and is not covered by the ADA.

Hyatt claims that Mr. Christou is judicially estopped from seeking protection under the ADA because of his prior, contradictory, and sworn statements to the SSA. The doctrine of judicial estoppel prevents a party from successfully taking one position in one litigation and then adopting the opposite position in a subsequent litigation. *DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 191 (7th Cir.1995). This doctrine has been applied in the disability context to prevent a party from claiming total disability for one purpose, and then arguing that he is not disabled for another purpose.[4] *See id.* (hold-

---

**3.** Since I find that there is a genuine issue of material fact as to whether his impairment substantially limited a major life function, I do not address the ADA's alternative definitions of disability or Hyatt's argument that Mr. Christou was not regarded as having an impairment.

**4.** The circuits that have reviewed this issue are split. Some circuits find that a plaintiff is judicially estopped from claiming total disability for social security purposes and then later asserting claims under the ADA. *See Budd v. ADT Security Sys., Inc.,* 103 F.3d 699, 700 (8th Cir.1996);

ing that judicial estoppel prevents plaintiff from telling his pension hearing board that he was disabled and unable to work, and later telling the court that he was not disabled); *Dickey v. Peoples Energy Corp.,* 955 F.Supp. 886, 889 (N.D.Ill.1996) (Plunkett, J.) (holding that plaintiff cannot claim total disability under social security and consistently claim that he is a qualified individual under the ADA).

In *Overton v. Reilly,* 977 F.2d 1190, 1196 (7th Cir.1992), the Seventh Circuit held that a social security finding of disability could be consistent with a claim that a person is "qualified" to perform the job. But in Overton, the court did not address the doctrine of judicial estoppel. The plaintiff never stated on his social security application that he was unable to perform the particular job from which he was allegedly discriminatorily discharged.

█ This case more closely resembles *DeGuiseppe.* In his November 3, 1994 SSA application for disability benefits, Mr. Christou alleged that he was disabled as of September 30, 1994, and stated "I worked as a waiter and I can no longer see well enough to perform the job." On April 26, 1996, Mr. Christou filed the instant action in this court, claiming that he was discriminated against because of his disability and sought reinstatement as well as lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post judgment interest, and costs including reasonable attorney fees and expert witness fees and any other relief that the court deems appropriate. Given Mr. Christou's sworn testimony on his SSA form that he was disabled and could no longer perform the same job as a waiter, he is estopped from claiming that he can now perform his job as a waiter at Hyatt. Thus, Mr. Christou is not entitled to reinstatement to his former position or front pay or any other relief that is inconsistent with his statement that he is unable to perform his job as a banquet waiter. He is therefore limited to any compensatory dam-

ages from September 23 to September 30, 1994 and, on appropriate evidence, to punitive damages.

## C. Reasonable Accommodation

█ Discrimination under the ADA includes failure to reasonably accommodate an otherwise qualified individual. 42 U.S.C. § 12112(b) (5)(A). "An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations." *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134 (7th Cir.1996). Once an employer knows that an employee is disabled, then the employer and the employee must work together to determine the necessary accommodation. *Id.* at 1135.

There is ample evidence that the managers at Hyatt knew that Mr. Christou was claiming that he could not see well. Mr. Christou filed a harassment claim with the EEOC on June 16, 1994, alleging that he was discriminated against because of his disability. Furthermore, Hyatt admitted that Mr. Koretos tried to accommodate Mr. Christou by assigning him tables near the doors where the lighting is best and enlarged Mr. Christou's name on the sign-in sheet. Mr. Koretos also knew that Mr. Christou had to bring paper closer to read it.

█ Once Hyatt knew that Mr. Christou was alleging disability based on poor vision, Hyatt became obligated to work with Mr. Christou to determine the necessary accommodations. Although Mr. Christou did not ask Hyatt to change the size of the print so he could read better or ask someone to read documents to him, it does not mean that Hyatt fulfilled its duty to accommodate. When an important memorandum is distributed that could lead to the termination of an employee, it is appropriate for management to ensure that all employees receive notice. The fact that Hyatt had reason to know that Mr. Christou had trouble reading suggests

*McNemar v. Disney Store, Inc.,* 91 F.3d 610, 620 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). Other circuits hold that the Social Security Act and the ADA ask different questions, so that claiming

total disability for social security purposes is not necessarily inconsistent with seeking redress under the ADA. *Swanks v. Washington Metro. Area Transit Auth.,* 116 F.3d 582, 586–87 (D.C.Cir. 1997).

that it should have provided an alternative means of informing Mr. Christou of the change in policy. *See Fernbach v. Dominick's Finer Foods,* 936 F.Supp. 467, 473 (N.D.Ill.1996) (Aspen, C.J.) (failing to accommodate plaintiff's disability by not explaining the merchandise policy would be akin to failing to reasonably accommodate a blind employee by not providing qualified readers to inform the employee of the policy). Thus, there is a genuine issue of material fact as to whether Hyatt reasonably accommodated Mr. Christou's disability.

### D. Discriminatory Discharge

■ Disability discrimination under the ADA may be proved indirectly through the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden shifting method originally established for Title VII cases. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995). First, the plaintiff must state a *prima facie* case of ADA discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff. If the defendant meets this burden, the burden shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext for discriminatory action. *Id.*

■ To establish a *prima facie* case, the plaintiff must prove that (1) he is a member of a protected class; (2) his work performance met the employer's legitimate job expectations; (3) his employment was terminated; and (4) employees not in the protected class were treated more favorably. *Id.* For this argument, Hyatt only contests the fourth element. It claims that non-disabled employees were not treated better than Mr. Christou.

Hyatt had a policy prohibiting employees from entering and exiting the hotel from non-employee entrances. On June 27, 1994, Hyatt distributed a memorandum to all employees reiterating the policy in light of recent thefts in the hotel. On August 12, 1994, Hyatt posted a memorandum warning all employees that anyone caught entering or exiting from non-employee entrances "will be subject to disciplinary action up to and including possible termination. This includes a quick 'smoke' break and leaving the building at anytime during your shift."

Mr. Christou was terminated for violating this policy on September 23, 1994. No other employee was known to have been terminated for violating this policy prior to Mr. Christou. Hyatt claims that the policy was not enforced prior to June, 1994, but that because of the thefts, the hotel began to strictly enforce the policy. Since June, 1994, every person who violated this policy was terminated.

Mr. Christou was the first person terminated under the reiterated policy on September 23, 1994. He subsequently filed a charge of disability discrimination with the EEOC on October 19, 1994. Since that date, four other employees have been terminated for violating the entrance/exit policy. A reasonable juror could infer that Hyatt fired Mr. Christou because of his disability, based on the years of non-enforcement, and that subsequent to his discharge and his filing of the EEOC claim, Hyatt needed to be consistent in enforcing the policy. Thus, Mr. Christou has met his *prima facie* case.

The burden now shifts to Hyatt to articulate a legitimate, non-discriminatory reason for terminating Mr. Christou. Hyatt states that it fired Mr. Christou for violating the entrance/exit policy. The policy is published in the employee handbook and was reiterated twice in June and August, 1994. Thus, Hyatt has met its burden.

Mr. Christou must now show that the stated reason for his discharge was pretextual. For the same reasons stated above in the discussion on Mr. Christou's *prima facie* case, a reasonable juror could look at the circumstances surrounding the entrance/exit policy and find "either that a discriminatory reason more likely motivated [Hyatt] or that [Hyatt's] proffered explanation is unworthy of credence." *Robinson v. PPG Indus., Inc.,* 23 F.3d 1159, 1163 (7th Cir.1994) (quotation omitted).

### E. Disability–Based Harassment

■ Although the Seventh Circuit has never addressed the issue of whether a plain-

tiff can bring a disability harassment claim, at least two Northern District of Illinois courts have allowed the claim, adopting the harassment analysis from Title VII cases. *Gray v. Ameritech Corp.*, 937 F.Supp. 762, 771 (N.D.Ill.1996) (Shadur, J.); *Chua v. St. Paul Fed. Bank for Sav.*, 1996 WL 34458, *4 (N.D.Ill.1996) (Conlon, J.). Harassment "encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment.... For the harassment to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir.1996) (citation omitted).

Mr. Christou identified six incidents that he believed were harassing and that allegedly occurred in the last six months of his employment. First, one of Hyatt's banquet captains, Harvey Segawa, called Mr. Christou "hawkeye." Second, banquet manager Dean Koretos told Mr. Christou at a Hyatt meeting, with 45 other people present, to "shine your glasses so you can serve." Third, Mr. Koretos suggested that Mr. Christou should change his prescription glasses. Fourth, Mr. Koretos said to Mr. Christou that "You always fall down because you cannot see." Fifth, Mr. Koretos stated: "Since you cannot see so well, why did you accept this job." Finally, Stone Pilkenton, the Assistant Food and Beverage Director, saw a dirty glass and "he didn't talk to [Mr. Christou] well." When Mr. Christou attempted to explain that he had a problem with his eyes, Mr. Pilkenton told him "if you can drive coming here, you are able to see; if you cannot see, then you have got no business being here." He further said "if you are driving and you cannot see, then you shouldn't be driving either."

To determine whether the above conduct is harassing, the court should "consider the alleged harassment from an objective perspective and ask whether a reasonable person would perceive his or her environment to be hostile or abusive." *Id.* at 480. The factors to consider include the frequency, severity, and disruptive effect of the offensive behavior. *Id.* In this case, there were six incidents/comments over a six month period. Although some of the comments could be considered offensive, others, such as suggesting you change your eyeglass prescription are innocuous. Thus, their frequency and severity do not rise to the level of unreasonably interfering with Mr. Christou's working environment.

### F. Retaliation

The *McDonnell Douglas* burden-shifting test applies to retaliation claims. *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir .1997). To establish a *prima facie* case of retaliation, Mr. Christou must show (1) that he engaged in statutorily protected expression, (2) that he suffered an adverse action by his employer, and (3) that there is a causal link between the protected expression and the adverse action. *Id.* In this case, it is undisputed that Mr. Christou filed an EEOC claim alleging disability harassment on June 16, 1994 and was fired from his position as banquet waiter three months later on September 23, 1994. The only question is whether those two acts were connected.

"[S]uspicious timing does constitute circumstantial, or indirect, evidence to support a claim of [retaliation]." *Id.* The three month period between the filing of the EEOC claim and Mr. Christou's termination appears suspicious, especially in light of the reason why he was fired (for violating a policy that was not enforced for years) and the comments that were directed towards him at work. Thus, Mr. Christou has stated a *prima facie* case of retaliation.

The burden shifts to Hyatt under *McDonnell Douglas* to articulate a non-retaliatory reason for discharging Mr. Christou. For the reasons outlined in Part D, *supra*, I find that Hyatt has articulated a legitimate reason, and that Mr. Christou has sufficiently identified facts to show that the reason is pretextual. Thus, there is a genuine issue of material fact as to whether or not Hyatt

terminated Mr. Christou in retaliation for filing an EEOC claim.

## Conclusion

For the foregoing reasons, Hyatt's motion for summary judgment is granted in part and denied in part. Judgment on the disability harassment claim is entered for Hyatt. Mr. Christou's relief on his other claims is limited as outlined in this opinion.