Gale Q. BEST, Jr., Plaintiffs,

v.

SHELL OIL COMPANY, Defendant.

No. 93 C 6653.

United States District Court,
N.D. Illinois,
Eastern Division.

May 1, 1998.

Alan Charles Schaefer, Schaefer & Schaefer, Barrington, IL, for Plaintiff.

L. Chris Butler, Shell Oil Company, Houston, TX, Larry J. Chilton, Chilton, Yambert & Porter, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Pending is Plaintiff's post-trial motion, upon which an evidentiary hearing was conducted, for an award of back pay, prejudgment interest, back benefits, front pay with front benefits, and enhancement for tax penalty.

### BACKGROUND FACTS[1]

Gale Q. Best, Jr. ("Best") worked as a gasoline delivery truck driver at Shell Oil Company's ("Shell") Des Plaines, Illinois facility for five and a half years. On October 20, 1991, Best injured his left knee while making a gasoline delivery. The injury made it painful for Best to drive some of Shell's trucks. Eventually, after Best had spent some time on disability leave and had sought certain modifications in the truck cab to accommodate his tender knee, Shell placed him on unpaid leave of absence in November 1993, which prompted Best's resignation.

---

1. For a more detailed description of the facts and procedural history of this case, *see Best v. Shell Oil Co.*, 1995 WL 330764 (N.D.Ill. May 30, 1995), *Best v. Shell Oil Co.*, 910 F.Supp. 405 (N.D.Ill.1995), and *Best v. Shell Oil Co.*, 107 F.3d 544 (7th Cir .1997).

In November 1993, Best brought this action against Shell complaining that, among other things, Shell had failed to meet its obligations under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq. Subsequently, Shell filed a summary judgment motion on the ADA count. In reviewing the lower court's decision to grant summary judgment on the ADA count to Shell, the Seventh Circuit reversed and remanded the cause for further proceedings after finding that there existed a "genuine issue of fact on the impact of [Best's] injury on the major life activity of working." *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir. 1997). The court stated that "a reasonable trier of fact could find that Best's bad knee substantially limited his ability to work as a truck driver" and/or that "a trier of fact could find that Shell perceived Best as having a disability that prevented him from working as a truck driver for the company." *Id.*

After remand from the Seventh Circuit, the cause was transferred to this court and a jury trial was conducted. The trial resulted in findings by the jury that Best was not disabled but that in 1993 Shell had regarded Best as disabled in the sense that he was substantially limited in the ability to work. *See* 42 U.S.C. § 12102(2). The jury awarded Best $45,000 in compensatory damages and declined to award punitive damages.

Plaintiff now seeks: (1) back pay, (2) pre-judgment interest on the back pay, (3) back benefits, (4) front pay and front benefits, and (5) enhancement for any tax penalty.

## DISCUSSION

### I. *BACK PAY.*

Best contends that he is entitled to $144,661 in back wages. Shell contends and is in agreement that Best is entitled to $86,546.99 in back pay. Otherwise, Shell disputes three aspects of Best's calculations: (1) the amount of overtime reimbursement sought by Best; (2) the appropriate starting date in 1993 from which to calculate damages; and (3) Best's inclusion in his calculations of a period of time in 1997 when Best was unemployed due to quitting a job or was physically unable to

work. The court will address these challenges in turn.

### A. *INCREASED OVERTIME PAY.*

In Best's post-trial memorandum, Best sought $117,354 in back wages. In Best's reply brief, Best amended the amount he sought for back pay to $144,661. Best's additional amount ($27,307) represented an alleged additional eight hours of overtime for each two-week pay period. Shell disputes that Best is entitled to this additional overtime back pay.

Best did not demonstrate with any evidentiary proof his entitlement to the additional overtime back pay. Therefore, Best's additional overtime request of $27,307 must be disallowed.

### B. *TIME PERIOD IN 1993 FOR STARTING BACK PAY COMPUTATION.*

As the jury found that Shell regarded Best as disabled "in 1993," the parties agree that Best's back pay calculation should begin in 1993. The parties disagree, however, regarding *when in 1993* the back pay calculations should begin.

Best argues that his back pay award should begin May 1, 1993 when he received a return-to-work slip by his personal physician. On the other hand, Shell argues that Best's back pay award should begin on October 22, 1993 because, in a separate worker's compensation proceeding filed prior to this case, Best represented that he was totally disabled and, therefore, unable to work from October 21, 1992 through October 21, 1993 (excluding a period during which he was employed by another trucking company). In other words, Shell argues that Best is judicially estopped and should not receive damages for a time period during which he represented in another legal proceeding he was incapable of working.

This court agrees with Shell. Best is estopped and cannot recover back pay for a period during which Best represented in another legal proceeding that he could not

work. *See, e.g., McNamara v. City of Chicago,* 138 F.3d 1219, 1224–25 (N.D.Ill.1998); *DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 191 (7th Cir.1995); *Christou v. Hyatt Regency–O–Hare,* 996 F.Supp. 811, 814–15 (N.D.Ill.1998).

## C. INJURY AND UNEMPLOYMENT DURING 1997.

■ Finally, Shell disputes Best's entitlement to back pay for certain periods during 1997. Shell asserts that Best testified in a post-trial deposition that he was unable to drive from May 28 to September 27, 1997 due to a back injury. Then, Best quit his job on September 27, 1997 and did not go back to work until December 11, 1997. Shell asserts that Best may not recover back pay for the four month period during which he was unable to drive and the three month period when he was unemployed as a result of quitting the job. *See, e.g., Bowe v. Colgate–Palmolive Co.,* 272 F.Supp. 332, 366 (S.D.Ind. 1967), *modified,* 416 F.2d 711 (7th Cir.1969) (awarding back pay only for time that plaintiffs were available for work).

In response, Best asserts that he injured his back while mitigating his damages when he undertook a job with Marriott that required more strenuous lifting and pulling than his Shell job. Best further asserts that he quit the Marriott job because he could not physically perform the work. Best argues that Shell should not benefit from Best's injury which would not have occurred had he still been employed by Shell. Best asserts, *inter alia,* that, since he was physically unable to perform the Marriott job, Best's ten weeks for unemployment was not a failure to mitigate.

The court agrees with Best's position and finds in favor of Best on this point. Best thus is awarded the $18,041.28 involved in the period from May 28 to December 11, 1997.

## D. BACK PAY SUMMARY.

In summary, this court awards Best back pay in the amount of $104,588.27.[2]

2. This consists of the $86,546.99 undisputed back pay amount and the $18,041.28 in back pay

## II. PREJUDGMENT INTEREST.

■ Best seeks prejudgment interest on his back pay. Prejudgment interest is "presumptively available to victims of federal law violations." *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1372 (7th Cir.1992). *See also Hutchison v. Amateur Electronic Supply, Inc.,* 42 F.3d 1037, 1046 (7th Cir. 1994) ("Prejudgment interest is an element of complete compensation and a normal incident of relief under Title VII."). Shell does not dispute Best's entitlement to prejudgement interest on his back pay award at the prime rate.

In summary, this court awards Best prejudgment interest on his back pay award using annual prime rates compounded annually. Under such an analysis, Best is entitled to an additional $15,164.55. (*See* Shell's Supp. Post–Trial Br. at 6.)

## III. BACK BENEFITS.

Best seeks awards for two monetary benefits (the Shell Provident Fund and the Shell Pension Plan) plus $49,185 for all non-monetary benefits. Shell alleges that Best has incorrectly calculated his lost back benefits damages.

## A. THE SHELL PROVIDENT FUND.

■ The Shell Provident Fund is a tax exempt trust to which both Shell and the employee may make contributions. Best alleges that he is entitled to an award of $30,830 for benefits to this fund. Shell claims that Best is entitled to $20,985.90 regarding the Provident Fund. Shell maintains that the disparity in positions is essentially due to Best overstating the earnings and overall value of the account.

Upon review, the court agrees with Shell and awards Best $20,985.90 as to the Provident Fund.

## B. THE SHELL PENSION PLAN.

■ Best seeks an award attributable to pension benefits of $35,818.00. Shell argues that Best is entitled to $7,461.94 for pension benefits.

for the period Best was off work resulting from injury during 1997.

The Shell Pension Plan calculates pensions based on the employee's average final compensation, age, and accredited service. Shell calculated Best's lost pension benefits by determining the present value of the pension Best will actually receive ($3,875.25) and comparing it to the present value of the pension he would have received had he remained employed through the appropriate date ($11,337.19).

Shell contends that Best arrived at his $35,818 estimation of lost pension benefits by failing to reduce future pension benefits to a present value. *See Ballantine v. Central R.R. of New Jersey*, 460 F.2d 540 (3rd Cir. 1972).

The court finds upon review that Shell's calculation of Best's lost pension benefits is the proper one. Best therefore is awarded $7,461.94 for lost pension benefits.

## C. NON–MONETARY BENEFITS.

■ Best additionally seeks compensation for lost non-monetary benefits. These benefits are basically insurance plans. Best calculates that he is entitled to recover $.34 per dollar of back pay he recovers. On the other hand, Shell asserts that recovery for such nonmonetary benefits is limited to insurance premium or replacement costs and that, for the most part, Best made no attempt to replace the coverage afforded by these plans after resigning from Shell. Moreover, Shell argues that the premiums paid by Best for any replacement coverage after he resigned from Shell were considerably less than he had paid before.[3] Therefore, Shell asserts that Best is not entitled to any damages for loss of these non-monetary benefits. *See, e.g., Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 161 (7th Cir.1981) (lost health insurance not included in back pay calculations because plaintiff had not pur-

chased alternative coverage), *overruled on other grounds by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988).

Shell asserts that Best's calculation of damages for these benefits—$35,206.37—reflects the *cost to Shell* to provide these benefits, not any actual payment that would have been made to Best if his employment with Shell had continued. Shell avers that this is an incorrect measure of damages and that the correct measure of damages for lost back benefits is the out-of-pocket expense incurred by the plaintiff to replace the coverage. *See, e.g., Mister v. Illinois Central Gulf R.R. Co.*, 790 F.Supp. 1411, 1418–19 (S.D.Ill.1992).

Upon review, the court finds Shell's position to be correct. Accordingly, no award is granted Plaintiff for non-monetary benefits.

## IV. FRONT PAY AND BENEFITS.

The ADA provides that Title VII remedies apply to any person alleging discrimination on the basis of a disability. *See* 42 U.S.C. § 12117(a) (stating that "powers, remedies, and procedures" of Title VII shall apply to ADA discrimination claims). The parties agree that reinstatement is not appropriate in this case.[4] In lieu of reinstatement, Best seeks front pay and benefits.

## A. FRONT PAY.

■ Front pay may be awarded under Title VII (and therefore under the ADA pursuant to § 12117(a)) where reinstatement is unavailable. *Williams v. Pharmacia*, 137 F.3d 944, 952 (7th Cir.1998). Best seeks front pay covering the period from the entry of judgment until the end of the year 2012, when Best would be 62 years old and retirement age.[5] Best has estimated this compensable amount to be $315,032 for future wages and $153,621 for future benefits for a total of $468,653. Presenting extensive argument,

---

**3.** Shell also maintains that Best had no claims under the few policies he did replace through other employers.

**4.** Although Best originally sought reinstatement, he expressly surrendered his claim to reinstatement both in his initial reply brief (at pp. 7–8) and in open court during the post-trial evidentiary hearing. Instead, Best opted to pursue his claim for front pay.

**5.** Best aptly argues that front pay is available to cover the period of time which the court determines will be necessary for Best to find comparable work or until retirement if the court finds that he will not find replacement work comparable to the Shell position. (Pl. Supp. Post–Trial Br. at 12, 15.)

Shell objects to Best's request in its entirety. In the alternative, Shell argues that front pay should be limited to $4,000.

██ It has been expressed that front pay is "a lump sum ... representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment." *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 n. 8 (7th Cir.1994). *See also Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir.1995). The Seventh Circuit has stated that in deciding whether to award front pay:

> the court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded.

*Downes*, 41 F.3d at 1141. "An employee receiving front pay in lieu of reinstatement is entitled to front pay only until such time that the employee can reasonably be expected to have moved on to similar or superior employment." *Williams*, 137 F.3d at 954. *See also Ward v. Tipton County Sheriff Dept.*, 937 F.Supp. 791, 796 (S.D.Ind.1996) ("Front pay is awarded for a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment.").

██ Although front pay awards are by nature speculative, the longer the period of time for which an award is sought, the more speculative it becomes. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir.1992). *See also Williams v. Pharmacia Opthalmics, Inc.*, 926 F.Supp. 791, 796

(N.D.Ind.1996) ("A [front pay] remedy must be based on events more likely than not to occur, and the existence of future uncertainties have led courts to act cautiously when considering awards of front pay for lengthy periods."), *aff'd*, 137 F.3d 944 (7th Cir.1998). "Damages in employment discrimination cases are not intended to insure a plaintiff's future financial success." *McKnight*, 973 F.2d at 1371. Instead, "[d]amages should ordinarily extend only to the date upon which 'the sting' of any discriminatory conduct has ended." *Id.* (quoting *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir.1992)).[6]

Initially then, in making a front pay determination, this court must resolve whether and when Best may find alternative comparable employment. In the mitigation context, the Seventh Circuit has defined "comparable work" as a position that affords "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status" as the previous position. *Hutchison*, 42 F.3d at 1044. Shell asserts that front pay is intended to be temporary in nature and that Best should be able to find comparable employment.

Based on the facts and circumstances of record, and bearing in mind that the jury expressly found Best not to be disabled, this court can discern no reason to think that Best cannot find a comparable job.[7]

The parties are, additionally, at issue as to whether Best's front pay request is speculative in nature. For example, Shell offered evidence (which Best disputes) that, during his employment at Shell, Best's relationship with his management and peers was less than harmonious. *See, e.g., Tennes v. Commonwealth of Massachusetts*, 944 F.2d 372, 381 (7th Cir.1991) (finding that district court did not abuse discretion in refusing front pay

---

6. *See, e.g., Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 254, 261 (3rd Cir.1986) (affirming award of six months front pay); *Toth v. American Greetings Corp.*, Nos. C83–4402, C84–725, 1985 WL 6145, at *9 (N.D.Ohio March 28, 1985) (front pay awarded for six months to give plaintiff time to look for job), *aff'd*, 811 F.2d 608 (6th Cir.1986); *Goss v. Exxon Office Sys. Co.*, Civ. No. 82–3156, 1983 WL 612, at *11 (E.D.Pa. July 1, 1983) (awarding front pay for four

months to cover expected period of job loss), *aff'd*, 747 F.2d 885 (3rd Cir.1984); *Equal Employment Opportunity Comm. v. Pacific Press Pub. Ass'n*, 482 F.Supp. 1291, 1320–21 (N.D.Cal. 1979).

7. In fact, after he left Shell, Plaintiff had a comparable truck driver position (as to pay, etc.) with Marriott before he was injured while there.

where defendant had high turnover rate and plaintiff had poor employment record); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1057 (7th Cir.1990) (evidence regarding complaints from advertisers, tension with management, and other performance-related problems "should not be ignored" in making the front pay determination).

Shell further argues that because of the procedural history of this case, Best will receive a larger than usual award of back pay (four-and-a-half years). When the back pay award covers such an extended period, courts have declined to award further, speculative damages. *See, e.g., Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir.1996) (district court did not abuse its discretion in denying front pay where the plaintiff had already been awarded back pay over a five year period plus attorney fees); *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 145 (2d Cir.1993) (refusing a front pay award in light of back pay award).

Having considered the case record and parties' arguments concerning Best's ability to find comparative employment, the extended period of back pay awarded here, the time period of Best's employment with Shell, his relationships there, his employment history, the speculative nature of front pay, and the other circumstances of this case, the court, in the exercise of its discretion, awards Best nine (9) months of front pay in the amount of $15,808.93.[8]

### B. FRONT BENEFITS.

 Front pay may include future benefits. *See Downes*, 41 F.3d at 1142 & n. 9. *See also Marlborough v. American Steel Foundries*, No. 95 C 3151, 1995 WL 765275, at * 13 (N.D.Ill.Dec.26, 1995). Under the circumstances here, including the four-and-a-half year back pay and back benefit award and nine month front pay award, this court, in its discretion, deems it unnecessary and inappropriate to grant Best an award for any future benefits.

8. This figure is based on an average of Best's compensable lost back pay over the last four years (*i.e.*, the average of $29,779.67 in 1994,

## V. ENHANCEMENT FOR INCREASED TAX LIABILITY.

 Without citation of any authority whatsoever, Best also asks for $181,944.14 "to cover the increased tax rate which will result from the hoped-for lump sum distribution of this Judgment." (Pl. Post–Trial Reply Br. at 14.) Shell objects to Best's request on the basis that Best is responsible for his own taxes just as if he had remained a Shell employee.

The case authorities support Shell's objection. *See, e.g., Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C.Cir.1994) ("[T]he general rule that victims of discrimination should be made whole does not support 'gross-ups' of back pay to cover tax liability."); *Hukkanen v. International Union of Operating Engineers, Hoisting & Portable Local No. 101*, 3 F.3d 281, 287 (8th Cir.1993) (affirming district court's refusal to enhance monetary award to plaintiff in order to compensate her for increased tax liability resulting from receipt of award in one year).

Accordingly, Best's request for tax liability enhancement of the award is denied.

## VI. SUMMARY.

In summary, this court grants Best awards as follows:

| ITEM | AMOUNT |
| --- | --- |
| **Back Pay** | $104,588.27 |
| **Interest on Back Pay** | $15,164.55 |
| **Back Benefits** | |
| **Provident Fund** | $20,985.90 |
| **Pension Fund** | $7,461.94 |
| **Non–Monetary Benefits** | —— |
| **Compensatory Damages** | $45,000.00 |
| **Front Pay** | $15,808.93 |
| **Front Benefits** | —— |
| **TOTAL** | **$209,009.59** |

$19,219.71 in 1995, $17,273.65 in 1996 and $18,041.28 in 1997).

## CONCLUSION

For the foregoing reasons, judgment is entered for Plaintiff Gale Q. Best and against Defendant Shell Oil Company in the aggregate sum of $209,009.59, consisting of compensatory damages in the sum of $45,000.00, back pay and benefits in the sum of $133,036.11, prejudgment interest on the back pay in the sum of $15,164.55 and front pay in the sum of $15,808.93.[9]

---

9. The court is cognizant that Plaintiff's counsel also intends to seek attorney's fees in this case. As the parties are aware, and it bears reiterating, compliance with Local Rules 46 and 47 is mandatory with respect to this matter.