**Frank DeGUISEPPE and Torry Palermo, Plaintiffs–Appellants,**

v.

**VILLAGE OF BELLWOOD and Robert Frascone, Defendants–Appellees.**

No. 95–1296.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1995.

Decided Oct. 16, 1995.

Armand L. Andry (argued), Oak Park, IL, for Torry Palermo and Frank DeGuiseppe.

John M. Sullivan, Susan L. Jantorni (argued), Nancy S. Harbottle, Staehlin, Jantorni & Sullivan, Chicago, IL, for Village of Bellwood and Robert H. Frascone.

Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs, two sergeants with the Village of Bellwood, Illinois, Police Department, filed this 42 U.S.C. § 1983 action against the Village and its police chief in his official capacity.[1] Although the details of each plaintiff's claim differed slightly, the gist of both was that the chief, Robert Frascone, had retaliated against them in violation of their First Amendment rights after they unsuccessfully opposed his promotion to police chief. The district judge granted defendants' motion to dismiss with respect to plaintiff Palermo and granted summary judgment against plaintiff DeGuiseppe; both plaintiffs now appeal, but we affirm.

## BACKGROUND

This dispute originated in 1990, when the chief of police position at the Bellwood Police Department became vacant and Frascone, at the time a patrolman, was selected by the Village for the job. Palermo, DeGuiseppe and others, angered at this promotion to the top spot of a rank-and-file officer, protested in a letter written to Frascone, the mayor and the Village Board and published in several local media outlets. Subsequently Frascone held a series of meetings with plaintiffs, who had continued to express vocal opposition to him. Plaintiffs allege that at one of those meetings, Frascone threatened retaliation against both of them for their opposition. More specifically, they claim that Frascone told them, "I don't get mad—I get even."

Soon after, say the plaintiffs, Frascone carried out this threat by instituting disciplinary proceedings against Palermo and by refusing to grant light duty status to DeGuiseppe. Palermo remains on the police force; DeGuiseppe, who applied for a disability pension after being denied light duty, is retired.

## DISCUSSION

█ Both plaintiffs' claims were decided prior to trial on the merits: Palermo's on a motion to dismiss and DeGuiseppe's on summary judgment. This Court reviews each claim *de novo*. We uphold a motion to dismiss only if the plaintiff has stated no set of facts on which relief could be granted. *Chaney v. Suburban Bus Div. of Regional Transp. Authority*, 52 F.3d 623, 626 (7th Cir.1995). We review a grant of summary judgment to determine whether the record, with all reasonable inferences drawn in favor of the non-movant, establishes that the movant was entitled to judgment as a matter of law. *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 796 (7th Cir.1995). In both cases, our sole inquiry concerns the potential liability of the Village of Bellwood; because Frascone was sued only in his official capacity, a

---

1. The district court determined that police chief Robert Frascone was not sued in his individual capacity, a decision that plaintiffs did not appeal.

suit against him is deemed to be a suit against the municipality. See *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir.1991).

### I. Plaintiff Torry Palermo

■ Frascone disciplined Palermo for departmental infractions, issuing him a five-day suspension. Palermo appealed his suspension to the Board of Police and Fire Commissioners, who found him guilty of the alleged infractions but reduced the suspension to three days. He did not pursue further administrative relief.

Palermo's claim on appeal is foreclosed by *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), which holds that municipal liability will not result from an official's conduct unless the official is a final decision-maker. Under Illinois state law, final authority for issuing disciplinary measures against an officer is vested exclusively in the Board of Police and Fire Commissioners, not the police chief; Palermo successfully pursued a reduction in his suspension pursuant to this statute. 65 ILCS 5/10–2.1–17 (formerly Ill.Rev.Stat. Ch. 24, § 10–2.1–17). Because Frascone was not the final decision-maker with respect to Palermo's suspension his conduct cannot serve as the predicate to municipal liability, and the claim based thereon was correctly dismissed.

### II. Plaintiff Frank DeGuiseppe

DeGuiseppe's claim against Frascone, arising out of his attempt to secure a "light duty" assignment, requires more extended analysis.

### A. Facts

On February 8, 1991, DeGuiseppe—who had previously undergone coronary bypass surgery—presented Frascone with a physician's letter recommending that due to his heart disease he should not work the midnight to 8 a.m. shift and should be placed on light duty for the next four months.[2] Refusing his request for light duty, Frascone instead told DeGuiseppe to call in sick for his midnight shifts and referred him to an independent physician who reported on March 11 that DeGuiseppe should not attempt further employment as a police officer.

After receiving this evaluation, Frascone refused to let DeGuiseppe return to work but told him to stay at home, where he continued to receive full pay. Frascone then referred DeGuiseppe to a second physician, who on April 26 returned a report that was similarly pessimistic about DeGuiseppe's future ability to perform police duties. Three days later, Frascone told DeGuiseppe to seek a disability pension or face involuntary proceedings begun by Frascone. As before, DeGuiseppe remained at home collecting sick pay.

On June 17, 1991, some four months after requesting light duty and shortly after learning that he had used all of his sick time, DeGuiseppe applied for a disability pension pursuant to Illinois statute[3] based on the evaluations of the two independent physicians. In evaluating DeGuiseppe's claim the pension board sent him to yet another physician who reported that DeGuiseppe was ca-

---

**2.** According to defendants, "light duty" generally entails a temporary restriction on activities performed rather than shifts worked; on previous occasions when DeGuiseppe's heart problems necessitated that he take light duty, for example, he spent the time deskbound typing out complaints. In this case, it is unclear from the physician's letter whether he was suggesting that DeGuiseppe perform light duty tasks for four months and be permanently relieved from the midnight shift, or whether the "no midnight shifts" request and the four-month light duty request were one and the same. However, DeGuiseppe has consistently argued that the light duty request was for four months of no midnights, and we evaluate his claim accordingly as a temporary restriction on shifts worked.

**3.** That section provides in pertinent part that:

A police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement.

40 ILCS 5/3–114.2. The statute allows for the possibility of temporary disability: it permits **suspension** from police service as well as **retirement,** and in a subsequent section alludes to an officer's return to active duty after disability. See 40 ILCS 5/3–114.4.

pable of returning to full-time police work; DeGuiseppe did not submit the report of his own treating physician which suggested that he was capable of ultimately performing unrestricted duty.

On November 12, 1991, the pension board granted DeGuiseppe a pension retroactive to May 31, 1991—the date when his sick leave had dissipated and he had ceased to receive full pay.

### B. Analysis

■■■ To establish a cause of action for retaliation in violation of the First Amendment, a public employee must demonstrate that he has suffered an adverse employment action motivated by the exercise of his right to free speech. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Pierce v. Texas Dept. of Crim. Justice,* 37 F.3d 1146, 1149 (5th Cir.1994). Several caveats limit this apparently broad dictate. The speech must be on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The employee's interest in speech must outweigh governmental interests in running an efficient and productive office. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734; *Breuer v. Hart,* 909 F.2d 1035, 1037 (7th Cir.1990). And the complained-of action must be sufficiently adverse to present an actual or potential danger that the speech of employees will be chilled. See *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 73–74, 110 S.Ct. 2729, 2736–37, 111 L.Ed.2d 52.

■■■ Defendants claim that plaintiff DeGuiseppe failed to make the necessary showings regarding the content of his speech, the balancing of his interest against their own or the adversity of Frascone's actions. We address the last point first.

DeGuiseppe implies that his confrontation with Frascone ultimately cost him his job: that the "adverse employment action" consisted of Frascone's forcing him into early retirement by denying his request for light duty and bullying him into applying for a pension. The legitimacy of this claim depends on whether it can fairly be said that Frascone's conduct caused DeGuiseppe to lose his position as police sergeant. The fact is that DeGuiseppe ended his police career of his own volition. At the pension board hearing, a proceeding at which he bore the burden of proof, see Mem.Op. at 9 (reprinted in Pl.Br.App.), DeGuiseppe stated that he was disabled and submitted two physicians' reports (and not the more optimistic evaluation of his own treating physician) in support of his claim.

■■■ DeGuiseppe now tells this Court that he was not disabled at the time of the pension board hearing but was forced by Frascone's retaliatory harassment to assert his disability in order to maintain an income, albeit a reduced one. Regardless of whether or not this contention is true, this Court is not disposed to consider it. Under the doctrine of judicial estoppel, which "prevents a party who has successfully taken a position in one litigation from taking the opposite position in a subsequent litigation," *Czajkowski v. City of Chicago,* 810 F.Supp. 1428 (N.D.Ill.1992), courts are under no compulsion to heed the shifting theories of "chameleonic litigants." See *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540 (7th Cir.1990). Instead, we will accept a party's prevailing position in previous litigation (or, as here, quasi-judicial proceedings) as dispositive. Here DeGuiseppe's position was that he was disabled and unable to work in June 1991 (and logically prior to that time, since there is no indication that his condition worsened rather than improved in the intervening months).

■■■ Judicial estoppel, of course, is an equitable doctrine, and DeGuiseppe urges us that its application in this case would unfairly punish him for action he was forced to take in self-protection. Suggesting that what he really wanted at the time of the pension hearing was light· duty, DeGuiseppe points out that the pension board had no authority to review his entitlement to such a duty request and that Frascone could have ignored any recommendation to that effect. See 40 ILCS 5/3–131 *et seq.* (setting forth responsibilities of pension board, which do not include adjudicating light duty disputes).

A review of the facts, however, belies the claim that emergency circumstances forced DeGuiseppe into making a false claim for self-preservation: by the time of the pension board hearing, light duty should no longer have been an issue. In early February De-Guiseppe indicated that he was unable to work the midnight-to-eight shift for the next four months, but that he was fully capable of performing all other police duties. By the time of the pension hearing in mid-June, those four months had expired. Even under the scenario posited by his own physician DeGuiseppe should have been ready to return to unrestricted duty, and thus did not face the Hobson's choice of disability or poverty that he now puts before this Court.

If DeGuiseppe had insisted on his fitness before the pension board as he does now, the board might well have determined that he was not disabled or entitled to a pension— and DeGuiseppe could simply have requested to return to work on his regular shifts.[4] He chose to take the money and run, and it would serve no equitable purpose to allow him to avoid the consequences of his own actions. We therefore analyze DeGuiseppe's retaliation claim with the understanding that he actually was disabled at the time of the pension hearing and is now estopped from arguing otherwise.

DeGuiseppe's disability at the time of the pension hearing means that his retirement from the police force does not lie at Frascone's door. What remains of his claim is that the simple fact of denying him light duty while granting it to other officers itself constituted an adverse employment action.

■■■ Under the law of this Circuit, retaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling employee speech on matters of public concern. "A campaign of petty harassment may achieve the same effect as an explicit punishment." *Walsh v. Ward,* 991 F.2d 1344, 1345 (7th Cir.1993); see also *Smith v. Fruin,* 28 F.3d 646, 649 (7th Cir.1994) ("even minor

forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect as more drastic measures."); *McGill v. Board of Educ. of Pekin Elementary School,* 602 F.2d 774, 780 (7th Cir.1979). DeGuiseppe need not show that his comments regarding Frascone's appointment led to his termination. Lesser retaliation such as demotions, diminished responsibilities, or false accusations all may suffice. See, *e.g., Dahm v. Flynn,* 60 F.3d 253 (7th Cir.1994); *Pieczynski v. Duffy,* 875 F.2d 1331, 1333 (7th Cir.1989).

■■■ DeGuiseppe must, however, show that Frascone took some action with materially adverse consequences to him, and this he has not done. He can only show that, presented with an unusual request for light duty, Frascone required him to obtain additional medical counsel, and that when two doctors warned against his return to the police force Frascone told him to seek a pension. These are reasonable decisions, and they are not made less so by the "don't get mad, get even" comment Frascone allegedly made several months earlier. To be considered materially adverse a change in the circumstances of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). And it certainly must be adverse in the sense that the employee is made worse off by it. Given that DeGuiseppe was deemed medically unfit to serve as a police officer, that he was relieved of his job duties and provided with full pay for the entire period while the medical investigation and pension board hearing proceeded, and that his pension was made retroactive to the date he stopped receiving full salary—in other words, he lost not a penny from Frascone's actions—there simply is no adverse employment action of which he can complain.

Our conclusions thus far make it unnecessary to consider whether DeGuiseppe's speech was protected as a matter of public

---

**4.** It is not clear what actions, if any, Frascone could have taken to keep DeGuiseppe off the force once the pension board had deemed him fit. A refusal to allow DeGuiseppe to return to work might be meat for a complaint—but not the one before us, where no such refusal transpired given that DeGuiseppe himself actively sought to retire.

concern or to perform a "balancing test" that evaluates the relative interests of the parties. The district judge properly granted summary judgment against DeGuiseppe, who failed to show that Frascone took any adverse action against him.

## CONCLUSION

The district judge's dismissal of plaintiff Palermo's complaint and his grant of summary judgment against plaintiff DeGuiseppe are affirmed.