In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1343

CHRISTIAN F. THOMSEN,

Plaintiff-Appellant,

v.

WAYNE ROMEIS, in his individual and official
capacity; MICHAEL S. THEISEN, in his individual
and official capacity; GERALDINE MATTHEWS,
in her individual and official capacity; MARY LOU
BRIMMER, in her individual and official capacity;
and THE TOWN OF MADISON, WISCONSIN,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 97-C-341--John C. Shabaz, Chief Judge.

Argued November 3, 1998--Decided January 6, 2000

Before, COFFEY, EASTERBROOK, and DIANE P. WOOD,
Circuit Judges.

COFFEY, Circuit Judge. Christian F. Thomsen, a
former police officer with the Town of Madison
Police Department in Madison, Wisconsin, brought
this action under 42 U.S.C. sec. 1983 against the
Town of Madison, Wisconsin Chief of Police, Wayne
Romeis; Madison Town Board members, Michael
Theisen, Geraldine Matthews and Mary Lou Brimmer;
and the Town of Madison ("defendants"), alleging
that the defendants violated his rights under the
First Amendment because they retaliated against
him after he complained to the local Police and
Fire Commission about the misconduct of other
members of his Police Department; he says the
retaliation took the form of reprimands for minor
violations of Department policy and ultimately,
termination. He also alleged that defendants
violated his rights under the Fourteenth
Amendment and Wisconsin law because they
wrongfully terminated him without allowing him to
bring his grievance regarding the termination to
arbitration. Thomsen originally filed suit in the
Wisconsin state court system. Defendant Romeis
moved for removal of the action to the United
States District Court for the Western District of

Wisconsin under 28 U.S.C. sec. 1446. The district court permitted removal. The defendants filed motions for summary judgment and the trial court then granted summary judgment for the defendants on Thomsen's First and Fourteenth Amendment claims, but did not rule on the state law claims, dismissing them without prejudice as permitted by 28 U.S.C. sec. 1367(c)(3). Thomsen appeals. We affirm.

I. BACKGROUND

Thomsen began working for the Town of Madison Police Department ("the Department") as a part-time officer in 1986 and became a full-time officer in 1989. In 1992, he was promoted to the position of Patrol Sergeant. Between 1990 and 1993, Thomsen received six written commendations for his work. Prior to February 1994, Thomsen never received a written adverse comment regarding his work, nor a letter of counseling, much less any type of written discipline. However, in February 1994, Thomsen and three other officers with the Department filed a "Request for Investigation" ("RFI") with the Town of Madison's Police and Fire Commission, alleging that Detectives Jim McCarthy and Mike Gehn were engaging in police misconduct, and that their chief, Romeis, was well aware of it but failed to take any action. For example, one instance of alleged misconduct was the carrying out of a practice called "Town Seizure," under which officers would seize monies that they believed to be drug-related from suspects, and without following proper procedures, declare the monies "abandoned" and deposit them in the Town of Madison's treasury. The RFI also alleged that McCarthy and Gehn investigated crimes based on information provided by drug informants who were on parole, contrary to Wisconsin Department of Corrections policies that prohibit the use of informants on parole; and also that McCarthy, while on duty, used his service revolver on one occasion to threaten to kill an individual for following his girlfriend. Romeis admitted in his deposition that he was "upset" by the filing of the RFI, which received extensive press coverage. Defendants do not contest that the matters discussed in the RFI are of public concern.

The RFI was filed on or about February 3, 1994. Four days later, on February 7, 1994, Romeis gave Thomsen a "letter of counseling" informing him that he needed to update his operations manual by inserting printed revisions into it and sending a signed acknowledgment to Romeis that the updates were made. The letter of counseling specifically stated that it was not disciplinary in nature and should not be construed as disciplinary, although it noted that if Thomsen

failed to correct the problem, he could be disciplined in the future. Thomsen admitted that he had not kept his policy manual updated because he had been out on sick leave. In addition, on February 8, 1994, five days after the RFI was filed, Romeis sent Thomsen a written warning stating that Thomsen, while performing his duties as Patrol Sergeant, had failed to follow seniority order when he chose an officer to fill a sick leave vacancy. Thomsen admitted that he made a mistake and failed to follow the proper procedure, which resulted in the Department's having to compensate both the officer who worked the shift and the officer who should have been given the opportunity to work the shift. Finally, on April 15, 1994, Thomsen received an oral reprimand from his supervisor, Lieutenant Gould, for reporting to court wearing a short-sleeved shirt. Lieutenant Gould is not a defendant in the case, nor did Thomsen present any evidence that Gould reprimanded him pursuant to the instructions of a defendant. Further, Thomsen admits that he should not have worn the short-sleeved shirt. He maintains, without offering any admissible evidence, however, that other officers were not disciplined for similar violations.

On June 14, 1994, Thomsen learned from his doctor that he had re-aggravated a pre-existing shoulder injury while performing as a patrol officer in the line of duty. In his deposition, Thomsen explained that he re-injured his shoulder in an altercation pursuant to an arrest that he made in February, 1993. Although Thomsen still is able to use his left arm and shoulder, Thomsen's doctor informed him that he was partially disabled in that he could not perform all of the duties of a patrol officer because of the injury. In addition, Thomsen admitted that it would have been unsafe for him to continue in his position as a Patrol Sergeant because he would be unable to use his left arm and shoulder in stressful situations where he might have to exert force. Thomsen informed Romeis of his doctor's diagnosis and opinion on July 12, 1994.

Then, on July 29, 1994, Thomsen submitted a duty disability retirement application to the state of Wisconsin to receive benefits under Wisconsin's program for "protective occupation participants" injured in the line of duty. See Wis. Stat. sec. 40.02 et seq. Thomsen also wrote a letter to his supervisor, Lieutenant Gould, that stated in relevant part, "I request to be assigned to a 'light duty' assignment within the Town of Madison Police Dept. . . . At such time as my application for Duty-Related Disability Retirement is successfully processed, I would then submit my resignation from the Town of Madison." Romeis subsequently informed Thomsen

that because he could not perform the essential functions of his job, and had submitted a duty disability retirement application, Thomsen had to resign or be discharged from his position with the Department. Romeis determined that there was no light duty assignment available for Thomsen.

Romeis further explained in his deposition that he opposed light duty requests as a matter of policy because he believed that in a department as small as his, all officers needed to be available to respond to emergency calls for assistance. Romeis acknowledged that he granted a light duty request for ten days for Thomsen in 1991, but made it clear at that time that the grant of the request was not to be considered "precedential." Further, Romeis had turned down another request for light duty work that Thomsen had made in 1993, prior to his filing of the RFI. Romeis had also turned down a 1994 request for a light duty assignment made by another officer who had no involvement in the RFI.

Despite the reasoning provided by Romeis, Thomsen nonetheless contended that he should have been re-assigned to a less physically taxing position, because he was able to perform, for example, the functions of a detective or a court officer. Thomsen acknowledged that these positions were filled, but argued that if he had not filed the RFI, Romeis would have at least explored the possibility of accommodating his request. But Romeis claimed that he refused to displace other officers from their positions because of the time involved in re-training, expense, and Romeis's knowledge that Thomsen was going to leave the Department once his disability benefits were approved. Consequently, says Romeis, he decided to terminate Thomsen's employment and informed Thomsen that he would be discharged once he had exhausted his vacation and sick leave time. As a result of the chief's decision, Thomsen left the Department on August 10, 1994. Romeis met with Thomsen twice before the termination, on July 12 and July 16, 1994, and gave him written notice of his discharge and an opportunity to comment on it. After Thomsen received notice of this job action, his union, the Wisconsin Professional Police Association ("WPPA"), filed a grievance protesting it, but the WPPA dropped the grievance without Thomsen's consent before submitting it to arbitration, reasoning that it lacked merit. Neither the WPPA nor the Police Department contested that Thomsen was injured and ultimately disabled while in the line of duty. The state of Wisconsin approved Thomsen for disability benefits and ordered that the award be made retroactive to the last day of his employment, August 10, 1994.

Thomsen thereafter filed this suit against the named defendants, alleging that they violated his rights under the First Amendment because they retaliated against him in issuing the three reprimands for minor violations of Department policy and by terminating him after he complained in the RFI about the misconduct of other Madison Police Department officers./1 He also alleged that the defendants violated his right to due process under the Fourteenth Amendment in that he was not allowed to bring his grievance regarding his discharge to arbitration. The district court granted summary judgment for defendants on Thomsen's First and Fourteenth Amendment claims, concluding that Thomsen did not establish a causal connection between his protected speech and the alleged instances of retaliation; that Thomsen failed to rebut the legitimate, non-retaliatory reasons that Romeis gave for ending his employment; and that Thomsen was not entitled to any more process than he received. The district court did not rule on Thomsen's state claims, dismissing them without prejudice as permitted by 28 U.S.C. sec. 1367(c)(3)./2

II.  ISSUES

On appeal we consider: (1) whether the district court properly concluded that Thomsen failed to establish that the defendants retaliated against him in violation of the First Amendment after he filed the RFI; and (2) whether the district court acted properly in finding that Thomsen was not denied due process in violation of the Fourteenth Amendment when Thomsen's union declined to pursue his grievance regarding his discharge.

III.  DISCUSSION

We review a district court's grant of summary judgment de novo. See Green v. Shalala, 51 F.3d 96, 99 (7th Cir. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id. We view the record and all reasonable inferences drawn from it in the light most favorable to the non-moving party. See Hartford Accident & Indem. v. Chicago Hous. Auth., 12 F.3d 92, 95 (7th Cir. 1993).

A.  Thomsen's First Amendment retaliation claim

In order to establish a sec. 1983 claim based on the First Amendment, a plaintiff must demonstrate that (1) his conduct was constitutionally protected and (2) his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Johnson v. University

of Wisconsin-Eau Claire, 70 F.3d 469, 482 (7th Cir. 1995). The plaintiff cannot prevail unless he establishes that the defendant would not have taken the challenged actions "but for" the constitutionally protected conduct. See id.; Button v. Harden, 814 F.2d 382, 383 (7th Cir. 1987). If the plaintiff meets his burden, the burden shifts and the defendant must show by a preponderance of the evidence that it would have taken the same actions even in the absence of the protected conduct. Mt. Healthy, 429 U.S. at 287; Johnson, 70 F.3d at 482.

In this case, the first prong of the Mt. Healthy analysis is not at issue; the defendants do not contest that the matters Thomsen raised in the RFI were of public concern and thus constitutionally protected. Even if Thomsen met his burden on the first prong, however, the district court found that Thomsen failed to meet his burden on the second prong, because Thomsen failed to present evidence demonstrating that his participation in filing the RFI motivated the defendants to take adverse actions against him. Indeed, Thomsen did not establish that "but for" the filing of the RFI, Romeis would not have issued either the letter of counseling regarding keeping his manual updated or the written warning about following seniority order when determining who received overtime vacancies. Nor did Thomsen establish that but for the filing of the RFI, Gould would not have issued an oral reprimand in written form regarding Thomsen's failure to appear in court in proper uniform. Finally, Thomsen failed to provide evidence establishing that his termination was motivated by his involvement in the RFI rather than by his inability to function as a patrol officer because of his disabled shoulder.

1.  The three reprimands

Thomsen argues that each of the three reprimands--the two from Romeis and the one from Gould--constituted an adverse action. He contends that because he had never received a written reprimand during his eight-year tenure with the Department, the three reprimands he received in short order after filing the RFI demonstrate that the defendants were retaliating against him. Although the timing of these events do appear suspicious--the RFI was filed in February 1994 and two of the reprimands were issued in February 1994 and one in April 1994--we are barred from "typically draw[ing] strong conclusions from the mere fact that protected speech may have preceded an adverse employment decision." Wright v. Illinois Dept. of Children & Family Servs., 40 F.3d 1492, 1500 (7th Cir. 1994).

Furthermore, it is unclear that the three incidents of which Thomsen complains constituted adverse employment actions. It is true that adverse acts need not be "monstrous" to be actionable; the acts need only "create the potential for chilling employee speech on matters of public concern." DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995). However, "[t]o be considered materially adverse a change in the circumstances of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. And it certainly must be adverse in the sense that the employee is made worse off by it." Id. (citation and internal quotation omitted). It is unclear how Thomsen was made worse off by the reprimands of which he complains. Thomsen argues that the three reprimands--the letter of counseling about updating his policy manual, which explicitly stated that it was non-disciplinary in nature; the written warning about his failure to follow seniority order in assigning overtime; and the oral reprimand regarding his failure to wear a long-sleeved shirt to court--could lead to future discipline and affect his ability to compete for promotions. These consequences, considered either individually or in conjunction with each other, appear to be somewhat speculative. Furthermore, Thomsen failed to demonstrate how the disciplinary warnings were related to his actual discharge, even though the warnings occurred very shortly after he filed his RFI. Moreover, Thomsen presented no admissible evidence demonstrating that he was treated differently than other officers who violated the same procedures but did not participate in the RFI. The only comparative evidence that Thomsen offered is his testimony that other officers also violated the uniform code, but Thomsen failed to present any admissible evidence establishing that the officers referred to were not disciplined for their violations. Furthermore, Thomsen failed to present evidence establishing that Lieutenant Gould, who issued the reprimand regarding the uniform violation, was acting at the direction of one of the defendants. In addition, Thomsen admits that he had violated Department policy in each instance that he was reprimanded. Thus, Thomsen failed to meet his burden of demonstrating that he would not have received the reprimands in the absence of filing the RFI. Furthermore, Thomsen failed to demonstrate that these three disciplinary actions influenced his ultimate discharge.


    2.  The termination

    A plaintiff cannot prevail on a retaliatory

discharge claim if the decision to terminate him would have been reasonable even in the absence of the protected conduct. See Mt. Healthy, 429 U.S. at 287; Khuans v. School Dist. 110, 123 F.3d 1010, 1014 (7th Cir. 1997); Conner v. Reinhard, 847 F.2d 384, 393 (7th Cir. 1988). Thomsen failed to meet his burden of proving that he would not have been terminated in the absence of protected conduct; indeed, Thomsen admitted that he had advised the Department that he had a shoulder disability and that his continuing to serve as a patrol officer at the time of his discharge would have been unsafe. Thomsen contends that, had he not filed his RFI, defendants would have attempted to accommodate him by reassigning employees or at least inviting other employees to consider moving into different positions. Thomsen presented no evidence to support this contention. Even if Thomsen had been able to marshal evidence to support this speculative assertion, defendants did nothing improper by declining to undertake Thomsen's proposed changes. Cf. Pond v. Michelin North America, Inc., 183 F.3d 592, 595 (7th Cir. 1999) (holding that employers are not required to bump other employees from occupied positions in order to reasonably accommodate disabled employees under the Americans with Disabilities Act); Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1051-52 (7th Cir. 1996) (same). In addition, Thomsen's contention that Thiesen, a Board member, angrily ordered him away from a town meeting in September 1994 does nothing to support his claim. First, this incident took place after Thomsen's termination in August 1994. Second, even if we accept Thomsen's reasoning that Thiesen was angry at him in September 1994, and therefore was angry at him when he was employed with the Department before that, a defendant's anger against a plaintiff does not alone establish that the challenged actions would not have occurred "but for" the constitutionally protected conduct. See Johnson, 70 F.3d at 482. Thus, just as with the three reprimands discussed above, Thomsen failed to produce evidence that he would not have been terminated in the absence of his protected conduct. Nor did Thomsen demonstrate that the Department had any obligation to transfer him, and we will not second-guess his employer's decision not to do so, since this court is not a "'super-personnel department' weighing the prudence of employment decisions." Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997) (citations omitted)).

B.  Thomsen's Fourteenth Amendment due process claim

Thomsen also argues that he was denied due process because his union dropped his grievance protesting his termination before arbitration, on the ground that the grievance lacked merit. Before Thomsen was terminated, Romeis met with him on July 12, 1994, and on July 16, 1994, and gave him written notice of his termination and an opportunity to comment on it. These meetings were followed by an exchange of letters, which again informed Thomsen of the reasons for his termination and invited his comments. These pre-deprivation measures, in conjunction with the procedures that were available to Thomsen, satisfy due process requirements. See Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 546–48 (1985); Staples v. City of Milwaukee, 142 F.3d 383, 385 (7th Cir. 1998); Chaney v. Suburban Bus Div. Regional Transp. Auth., 52 F.3d 623, 628–30 (7th Cir. 1995). Thus, while it is true that Thomsen could not compel his union to take his grievance to arbitration, see Vaca v. Sipes, 386 U.S. 171, 191 (1967), it is also true that the collective bargaining agreement here gave Thomsen the choice between proceeding on his own or proceeding through the union. He chose the union, and along with that choice he assumed the risk that the union would decide at some point not to pursue the grievance further. Under all circumstances, we are of the opinion that Thomsen received the process that he was due.

IV.  CONCLUSION

The decision of the district court to grant the defendants' motion for summary judgment was proper.

AFFIRMED.


/1 We note that the state of Wisconsin does not have a whistleblower statute that protects municipal employees. See Wis Stat. sec. 111.70(2) (outlining the rights of municipal employees).

/2 The record does not reflect whether Thomsen decided to pursue these claims in the Wisconsin state court system. Nor does the record indicate whether Thomsen requested (or could have requested) a hearing before the Police and Fire Commission concerning his termination.