OPINION
This case arises out of an action by a former police officer and his wife against the city of Miamisburg and several of his superiors with the city for numerous claims, including a whistleblower claim, defamation, intentional and negligent infliction of emotional distress, employer intentional tort, assault and battery, and loss of consortium. Plaintiff-Appellant David A. Stanley ("Stanley") and his wife filed the original complaint in this matter on November 8, 1996. Thereafter, Defendants jointly filed a motion for summary judgment. On October 20, 1997, the trial court sustained in part and overruled in part Defendants' motion. Specifically, the court sustained the motion as to the whistleblower, common law retaliatory discharge, defamation, intentional tort and negligent infliction of emotional distress claims; and overruled the motion as to the intentional infliction of emotional distress, assault and battery, and Mrs. Stanley's loss of consortium claims. Later, the trial court clarified its decision in response to cross-motions to reconsider by also dismissing the intentional infliction of emotional distress claim against Defendants Baker and Mitchell. This original case was voluntarily dismissed by Stanley in May of 1998 and refiled a week later.
In the new case, Stanley made all of the same claims he had made in his previous complaint. In addition, he made two more allegations which were not mentioned in the first case: (1) Defendants forced him to retire in retaliation, and (2) Defendants continued to retaliate against him from the date of retirement to the present. Shortly thereafter, Defendants filed a joint motion to dismiss all claims that had been dismissed in the October 20, 1997 summary judgment decision and the January 12, 1998 reconsideration decision. The trial court subsequently dismissed all previously rejected claims. Stanley appeals from the trial court's decisions sustaining Defendants' motions for summary judgment and reconsideration in the original case and the motion to dismiss in the present case raising the following assignments of error:
 The Trial Court Erred by Sustaining Defendant's Motion for Summary Judgment in Connection with Plaintiff[']s Whistle Blowers [sic] Claim.
 The Trial Court Erred by Sustaining Defendan't [sic] Motion for Summary Judgment in Connection with Plaintiff[']s Claim for Defamation.
 The Trial Court Erred by Sustaining Defendant [sic] Motion for Summary Judgment in Connection with Plaintiff[']s Claims for Intentional Torts Against the Defendant, City.
 The Trial Court Erred by Sustaining Defendant's Motion for Reconsideration in Connection with Defendant, Baker.
 The Trial Court Erred in Sustaining Defendant's Motion to Dismiss.
The pertinent facts of this case are as follows. Stanley was employed by the city of Miamisburg as a police officer from January of 1989 until September 25, 1996. During his employment with the city, Stanley was involved in two separate automobile accidents which caused severe injury. The first was an off-duty accident in October of 1993 in which he injured his hip and pelvis. Following this accident, Stanley was out of work until March of 1994, when he returned on light duty status. He ultimately returned to full duty status on July 31, 1995. Then, on November 14, 1995, Stanley was involved in an on-duty accident that resulted in injury to his back and re-injury to his hip and pelvis. Thereafter, Stanley was on leave, first paid and then unpaid, until he took a medical retirement on September 25, 1996.
During his employment with the city of Miamisburg, Stanley claims he witnessed several criminal abuses within the department and reported these to his superiors, Defendants Tom Schenck, Chief of Police, Captain Aubrey Baker, and Officer William Mitchell. Additionally, he contends that he reported these abuses to the City Manager, John Weithofer, and the Assistant City Manager, David Collinsworth, both also named as Defendants. Stanley confirmed in his deposition that all reports he made to these individuals were strictly verbal until a letter written to Collinsworth on August 9, 1996. This was the first time Stanley submitted any written complaints.
Stanley alleges that in response to these verbal reports made to his superiors, he received unfair treatment as retaliation. In his original complaint, Stanley alleged this retaliation included but was not limited to "transferring and reassigning Plaintiff; withholding from Plaintiff benefits to which Plaintiff was otherwise entitled and reducing the Plaintiff in position." Additionally, in his August 9, 1996 letter to David Collinsworth, Stanley detailed several of these incidents including: 1) threatened disciplinary action for engaging in extramarital activities which turned out to be with his wife; 2) threatened disciplinary action and investigations by the IRS for purchasing a new sports car and a new home; 3) refusal of benefits following an on-duty accident in 1995 resulting in removal from community-oriented police assignment; 4) confrontation with Chief Schenck over opened personal mail which resulted in Schenck striking Stanley with a door; 5) notification by Chief Schenck and Captain Baker on several occasions that he was not well liked and his chances for advancement were slim or nonexistent; 6) discrimination based on his disability including attempts to prevent him from taking a promotional exam. Further details were outlined in Mrs. Stanley's August 26, 1996 letter to Miamisburg City Council: 1) refusal to honor and interference with workers' compensation benefits; 2) denial of participation in several special projects that Stanley was allegedly more qualified for than those who were chosen; 3) requiring Stanley to attend court, training and depositions while heavily medicated on disability leave.
In a separate section of his original complaint, Stanley also maintained that he was forced by the city to take a medical retirement. However, he alleged the direct reason for the medical retirement was the city's failure to accommodate his disability. In his deposition, Stanley alluded that the failure to accommodate his disability by only allowing his return to street patrol was a retaliatory act. Nevertheless, Stanley did not specifically classify his retirement as a retaliatory act until his memorandum in response to Defendants' motion for summary judgment and his refiled complaint following the voluntary dismissal.
Stanley has also been involved in several other proceedings regarding his injuries in which he was required to testify as to his disability status. In his lawsuit against his insurance company resulting from the October 1993 accident, he testified that he was "not capable of performing the basic duties of a police officer." Further, in his testimony before the Police and Fireman's Pension Fund, he stated that he "would not be able to resume career as a police officer in any capacity." Moreover, several doctors testified that Stanley's injuries prevented him from performing the duties of a police officer.
 I
In Stanley's first assignment of error, he alleges that the trial court erred in granting summary judgment on his whistleblower claim. In this regard, the trial court found that none of the claimed acts of retaliation occurred within the 180-day statutory period, and judicial estoppel prevented Stanley from claiming his discharge was retaliatory. Additionally, Defendants argued and the trial court briefly mentioned that Stanley submitted no written reports regarding the whistleblowing activities until after the alleged acts of retaliation.
According to Civ. R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
The moving party has the burden to establish that there is no genuine issue as to any material fact. Id. This burden can only be met by identifying specific facts in the record which indicate the absence of genuine issues of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. By establishing that the non-moving party's case lacks the necessary evidence to support its claims, the moving party has successfully discharged its burden. Id. at 289-90.
Once this burden has been met, the non-moving party then has a reciprocal burden as outlined in Civ. R. 56(E), which provides the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." See id.
at 293. Civ. R. 56(E) provides if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, then summary judgment is proper. Id.
Statute of Limitations
If an employee wishes to bring a civil action against his employer under the whistleblower statute, he must do so within 180 days of the retaliatory action. R.C. 4113.52(D). In the present case, Stanley filed suit on November 8, 1996. Therefore, the retaliatory actions complained of must have occurred on or after May 12, 1996. Stanley alleged many acts of retaliation that occurred throughout his employment with the city, but only argues that three occurred within the 180-day statutory period. Those three acts include interference with workers' compensation benefits, failure of the city to investigate his complaints, and his forced retirement.
However, Stanley did not assert to the trial court during consideration of the summary judgment motion the former two acts. At that time, he only maintained the retaliatory discharge occurred within the 180-day period. Stanley first mentioned the prior two acts occurred within the statutory period in his motion for reconsideration filed November 28, 1997.
Raising an argument in a motion for reconsideration does not necessarily preserve that argument for purposes of appeal. SeeFranks v. The Lima News (1996), 109 Ohio App.3d 408, 411. The reason is that a motion for reconsideration is a nullity when filed in response to a final judgment. Id. Although the summary judgment decision in this case was not a final judgment when issued, it became a final judgment for purposes of appeal when certified under Civ. R. 54(B). Whitaker-Merrell Co. v. GeupelConstruction Co., Inc. (1972), 29 Ohio St.2d 184, 187. Further, as to the whistleblower claim raised by Stanley, the summary judgment decision was a final judgment because it completely dismissed that claim. Because the issues were not properly raised in the trial court, this court will not consider the argument that interference with workers' compensation and failure to investigate complaints occurred within the statutory period.
 Stanley did contend in response to Defendants' motion for summary judgment that his "forced retirement" was retaliatory and occurred within the statutory period. Although his actual retirement clearly occurred within the statutory period, it is not clear that the circumstances "forcing" him to retire did. Stanley maintains that he was forced to retire because he was only permitted to return to work on street patrol duty, instead of returning to the COPS program which was primarily sedentary work. He claims Chief Schenck informed him of this on January 9, 1996, outside the statute of limitations period. Knowing that he was incapable of performing street duty, he felt his only option was a medical retirement.
Whether the trigger date for the statute of limitations is the date he was informed that he must return to street duty or the actual date of his retirement is a difficult question that need not be addressed today. As evidenced below, this issue becomes moot when addressing further aspects of Stanley's whistleblower claim.
Judicial Estoppel
Defendants argued, and the trial court agreed, that judicial estoppel prevented Stanley from raising a retaliatory discharge claim. In this regard, the trial court held that Stanley had on many different occasions claimed his retirement resulted from an inability to perform his job due to his disability. The doctrine of judicial estoppel prevents a litigant who has successfully taken a position in one action from taking a contradictory position in a subsequent action. Scioto Mem. Hosp. Assn., Inc. v.Price Waterhouse (1996), 74 Ohio St.3d 474, 481. This doctrine applies to judicial as well as quasi-judicial proceedings such as Social Security and pension board. See DeGuiseppe v. Village ofBellwood (1995), 68 F.3d 187, 191., Defendants cite several federal cases which are analogous to the present case. In Wilsonv. Chrysler Motors Corp., a district court found judicial estoppel prevented a former employee from claiming retaliatory discharge after receiving Social Security disability benefits as well as pension benefits. (June 13, 1997), N.D. Ill. No. 95 C 50336, unreported. After being released by her doctor to return to work following a medical leave of absence, Wilson claims Chrysler did not permit her to return to work because their doctors found she was not capable. Id. at 4. Subsequently, Wilson applied for and was awarded SSA disability benefits, although she never admitted that she was disabled. Id.
at 5. Later, she also applied for and received a disability pension from Chrysler. Id. at 6. The court found that applying for and accepting disability benefits constituted a claim that she was disabled, regardless of her verbal suggestions to the contrary. Id. at 10. Further, Wilson's "self-preservation" argument that Chrysler gave her no choice but to apply for these benefits was also rejected by the court. Id. at 12. Consequently, the court held that judicial estoppel prevented Wilson from claiming she was constructively discharged in retaliation. Id.
In another case, a former police officer claimed he was "bullied" into applying for a disability pension in retaliation for not supporting the current police chief. DeGuiseppe, supra, at 191. As in the present case, DeGuiseppe requested a light duty assignment due to his disability and claims he was refused after several doctors reported he should not perform the duties of a police officer. Id. at 190. Subsequently, DeGuiseppe filed for and received a disability pension wherein he stated that he was disabled and submitted only the reports of the two physicians who found that he was totally disabled (as opposed to his own physician who stated that he could return to light duty). Id. at 191. The court found that by applying for and accepting the disability benefits, DeGuiseppe "ended his police career of his own volition." Id. Further, in response to his argument that he had really wanted light duty instead of a disability pension, the court held that the pension board had no authority to make such a determination. Id. Therefore, judicial estoppel prevented him from later claiming that he was forced to take retirement in retaliation. Id.
Similarly, in the present case, Stanley represented in at least two prior proceedings that his disability prevented him from performing the duties of a police officer. First, in his lawsuit against his insurance company resulting from the October 1993 accident, he testified that he was "not capable of performing the basic duties of a police officer." Then in his testimony before the Police and Fireman's Pension Fund, he stated that he "would not be able to resume career as a police officer in any capacity." There is no genuine issue of material fact that Stanley made these statements. As stated in DeGuiseppe, Stanley ended his career as a police officer on his own volition by making these statements for the purpose of obtaining funds based on his disability. The law prevents him from now saying that the city of Miamisburg or Chief Schenck constructively discharged him by "forcing" him to retire in retaliation for whistleblowing. Therefore, judicial estoppel prevents Stanley as a matter of law from claiming his retirement was a retaliatory act under R.C. 4113.52.
Written Report Requirement
As a final note, Stanley's whistleblower claim also must fail because he neglected to satisfy the mandatory requirements of Ohio's Whistleblower statute. In this regard, R.C. 4113.52(A) only protects an employee from retaliatory action if: "(1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation." Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,142. Implicit in this statute is that the oral and written notification of the reported activity must be completed prior to any alleged retaliatory action. See Bear v. Geetronics,Inc. (1992), 83 Ohio App.3d 163, 167, reversed on other grounds (1993), 66 Ohio St.3d 1424. If an employee does not strictly comply with these mandatory requirements, he is not protected under R.C. 4113.52, and thus may not bring a retaliatory discharge claim under the statute. Id.
While there is no dispute that Stanley orally notified several of his superiors of various alleged criminal abuses and other serious accusations, there is absolutely no evidence that Stanley put these allegations in writing prior to August 9, 1996. As discussed previously, no actionable retaliation occurred after this date. The only potential act of retaliation would have been the "forced" retirement. However, we have previously determined that Stanley is judicially estopped from claiming that his retirement was a retaliatory act. Therefore, the written notice requirement of the statute has not been met in this case.
Based on the foregoing, the trial court did not err in sustaining summary judgment in favor of Defendants on Stanley's whistleblower claim. The only alleged retaliatory act that potentially occurred within the 180-day statute of limitations was his retaliatory discharge which Stanley is judicially estopped from claiming. Further, he did not meet the written notice requirement in the statute which is necessary to be afforded protection under the whistleblower statute. Accordingly, Stanley's first assignment of error is overruled.
 II
In his second assignment of error, Stanley argues the trial court erred in sustaining summary judgment on his defamation claim against Defendant Baker. The alleged defamatory statement made by Baker was that Stanley is "a fucking mental." The trial court held that Stanley did not meet his reciprocal burden under the summary judgment standard in proving the statement was published to a third party as is required in a defamation action.
In order for Stanley to establish an action for defamation, he must demonstrate: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement."Pollock v. Rashid (1996), 117 Ohio App.3d 361, 368. The trial court focused on the third element, publication. In order to satisfy this element, a plaintiff must prove that the statement was published to a third party, and that third party understood the defamatory nature of the statement. Hahn v. Kotten (1975),43 Ohio St.2d 237, 243.
In his brief, Stanley emphasizes that Baker made the statement to him (meaning Stanley) in support of his argument against summary judgment. However, the plaintiff is not a third party. Defendants argued in their summary judgment motion and again in their appellate brief that based on the pleadings and Stanley's deposition, Stanley had no personal knowledge of publication to a third party. The trial court found that this was sufficient to discharge Defendant's burden in their motion for summary judgment. According to Civ. R. 56(E), it was now Stanley's responsibility to establish, by affidavit or other evidence, that there was a genuine issue of material fact for trial. Stanley failed to meet this burden. He mentioned in his deposition several people that he believes heard Baker make the statement, but did not submit an affidavit from any of them. These bare allegations without evidence to support them are not sufficient to defeat a motion for summary judgment. Tubbs v.Cuyahoga Metropolitan Housing Authority (June 10, 1993), Cuyahoga App. No. 62710, unreported.
We agree with the trial court that Stanley did not meet his reciprocal burden under Civ.R. 56(E), and Defendants' motion for summary judgment on Stanley's defamation claim against Defendant Baker was properly sustained. Accordingly, Stanley's second assignment of error is overruled.
 III
Stanley argues in his third assignment of error that the trial court erred in sustaining summary judgment on his employer intentional tort claim against the city of Miamisburg. In this regard, Stanley contends that R.C. 2744 does not grant immunity to a political subdivision for claims arising out of an employment relationship based on R.C. 2744.09(B).
The purpose of Chapter 2744 is to provide immunity for political subdivisions against liability for "injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee * * *." R.C.2744.02(A) (1). Stanley does not refute that none of the exceptions to this general rule found in R.C. 2744.02(B) apply to his case. However, he does contend that the city has no immunity based on R.C. 2744.09(B), which provides:
 This chapter does not apply to, and shall not be construed to apply to, the following:
 (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]
Stanley contends that his employer intentional tort claim necessarily arises out of the employment relationship between him and the Defendants. We disagree. The Ohio Supreme Court has conclusively held that employer intentional torts do not arise out of the employment relationship:
 When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other.
Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, 634. Several courts since Brady have relied on this reasoning in intentional tort claims brought against a political subdivision employer in the context of R.C. 2744, et seq. See Ellithorp v.Barberton City School Dist. Bd. of Educ. (July 9, 1997), Summit App. No. 18029, unreported; Abdalla v. Olexia (Oct. 9, 1999), Jefferson App. No. 97-JE-43, unreported; Nielsen-Mayer v. CuyahogaMetropolitan Housing Authority (Sept. 2, 1999), Cuyahoga App. No. 75969, unreported. More specifically, since an employer intentional tort does not arise out of the employment relationship, these courts have held that R.C. 2744.09(B) does not prevent the application of Chapter 2744 immunity to these claims.Ellithorp, supra; Nielsen-Mayer, supra. Consequently, a political subdivision is immune from employer intentional tort claims. Id. Therefore, the trial court did not err in sustaining summary judgment on Stanley's employer intentional tort claim against the city of Miamisburg, and thus, his third assignment of error is overruled.
 IV
In his fourth assignment of error, Stanley contends the trial court erred in sustaining Defendant Baker's motion for reconsideration of the intentional infliction of emotional distress claim. In its original summary judgment decision, the trial court overruled the motion as to the intentional infliction of emotional distress as it pertained to the individual Defendants. In their motion for reconsideration and clarification, Defendants pointed out that Stanley only responded to this claim with evidence that Defendant Schenck's actions had caused him emotional distress, not mentioning any actions of the other Defendants. The trial court found that Stanley did not meet his reciprocal burden under Civ. R. 56(E) on this claim as to Defendants Baker and Mitchell, and therefore, dismissed the intentional infliction of emotional distress claim against them.
Stanley argues in his appellate brief that he did in fact provide ample evidence to the trial court of Baker's "outrageous" activity in his deposition. He mentions specifically that Baker referred to him as a "fucking gimp" and continually referred to Stanley and his disability in a derogatory manner. However, Stanley did not raise these arguments in his response to Defendants' motion for summary judgment.
In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements:
 (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;
 (2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency,' Restatement of Torts 2d (1965) 73, Section 46, comment d; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j.
Wigfall v. Soc. Natl. Bank (1995), 107 Ohio App.3d 667, 675-76
(citations omitted). With respect to the concept of "extreme and outrageous," the Supreme Court has adopted the definition found in the Restatement:
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 375 (emphasis added) (citations omitted). Whether the conduct alleged is sufficient to make out a prima facie case of intentional infliction of emotional distress is a matter of law to be determined by the court. Pollock v. Rashid (1996), 117 Ohio App.3d 361,370, citing Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,375.
In their motion for summary judgment, Defendants compared all of the actions alleged by Stanley in his deposition with numerous cases finding the same types of actions did not constitute outrageous activity. See e.g. Breitenstein v. City of Moraine
(Nov. 5, 1992), Montgomery App. No. 13375, unreported (finding no infliction of emotional distress by City Manager who threatened employee and used foul language); Stramkowski v. Fairview MedicalCenter Parking Co. (Feb. 18, 1993), Cuyahoga App. No. 64152, unreported (finding no infliction of emotional distress by employer accused of wrongfully firing and falsely accusing employee); Webb v. Ohio Cas. Ins. Co. (Apr. 16, 1990), Butler App. No. CA 89-07-109, unreported (finding legitimate criticism of employee work performance did not constitute infliction of emotional distress). By presenting evidence that none of Stanley's allegations were sufficient to make out a prima facie
case, Defendants successfully discharged their burden under Civ. R. 56(C).
Since Defendants had met their burden, Stanley now had the responsibility to rebut Defendants' position and demonstrate there was a genuine issue of material fact for trial. Civ. R. 56(E);Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Stanley responded to the motion by presenting evidence of only Schenck's activities which he felt were sufficiently outrageous to support his claim. He made no mention of activities of the other Defendants. By not making an attempt to respond to the issues raised in the motion for summary judgment, Stanley did not meet his reciprocal burden as to Defendants Baker and Mitchell (claim against Mitchell was not raised on appeal). Maust v. MeyersProducts, Inc. (1989), 64 Ohio App.3d 310, 314.
Stanley now attempts on appeal to put forth evidence supporting his claim for intentional infliction of emotional distress against Defendant Baker. However, since the issue was not raised in the trial court, it is considered waived and he cannot raise it for the first time on appeal. Maust, supra
(citations omitted); Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, 43.
Accordingly, the trial court did not err in sustaining Defendants' motion for reconsideration on the intentional infliction of emotional distress claim and thus, Stanley's fourth assignment of error is overruled.
 V
In his fifth assignment of error, Stanley contends the trial court erred in granting Defendants' motion to dismiss. As discussed previously, Defendants filed a motion to dismiss following Stanley's Civ. R. 41(A) dismissal and refiling of this case. They relied on the evidence presented in support of their motion for summary judgment and asked the court to dismiss all claims previously rejected in the original case. Subsequently, the trial court granted Defendants' motion to dismiss all claims which had been dismissed in the summary judgment decision of October 20, 1997 and the reconsideration decision of January 12, 1998.
In his brief, Stanley claims there were two errors in granting this motion to dismiss. First, he contends the court did not consider the additional allegations made in his complaint that (1) Defendants forced him to retire, and (2) Defendants continued to retaliate against him from the date of his retirement until the present. Second, Stanley argues that the court erred in considering the evidence submitted with Defendants' previously filed summary judgment motion as there was no notice given that the motion to dismiss was being converted to a Civ. R. 56 motion for summary judgment.
The first part of Stanley's initial argument was resolved in our discussion of his first assignment of error. Both judicial estoppel and failure to comply with the whistleblower statute substantiate the court's decision to dismiss this claim, regardless of the supplemental allegation that his "forced" retirement was retaliatory in his refiled complaint. Further, Stanley's bare allegation that Defendants have continued to retaliate since his retirement is not protected by the statute. Specifically, R.C. 4113.52(B) states "no employer shall take any disciplinary or retaliatory action against an employee * * *." (Emphasis added). Additionally, the list of example retaliatory acts found in the statute constitute acts that can only be accomplished by employer to employee, i.e. discharge, suspension, reduction in pay, transferring, denying promotion. R.C.4113.52(B). Following his retirement, Stanley was no longer an employee who could be subject to such actions. Therefore, this additional allegation does not create an issue of fact for Stanley's whistleblower claim.
In his second argument, Stanley fails to acknowledge that the motion filed by Defendants was a motion to dismiss or in thealternative a motion for summary judgment. A trial court is not required to give notice to the parties of its conversion to a motion for summary judgment if the motion is so styled. Walker v.Associated Estates Realty Corp. (Sept. 24, 1998), Cuyahoga App. No. 74271, unreported, p. 2. Further, no notice is required if the opposing party acknowledges the dual nature of the motion.Applegate v. Fund for Constitutional Govt. (1990), 70 Ohio App.3d 813,816. Although Stanley failed to acknowledge it on appeal, he clearly recognized that Defendants' motion was in the alternative a motion for summary judgment in his responsive memorandum. First, he repeated the exact caption "Motion to Dismiss or in the alternative for Summary Judgment" in his opening sentence. Second, he requested an additional amount of time for discovery pursuant to Civ. R. 56(F), a rule which applies only to motions for summary judgment. And finally, he attached to his response a copy of his response to the previous motion for summary judgment, and an affidavit, stating they were submitted "in defense of Defendants' alternative request for summary judgment."
Moreover, it is not relevant that the trial court styled its decision as granting Defendants' motion to dismiss. When a trial court refers to evidentiary materials outside the pleadings in its decision, it indicates that a Civ. R. 56 motion for summary judgment was granted instead of a Civ. R. 12(B) (6) motion to dismiss. Nozik v. Mentor Lagoons Yacht Club (1996), 112 Ohio App.3d 321,324, citing State ex rel. Baran v. Fuerst (1990),55 Ohio St.3d 94, 97. In its decision, the trial court referred to the previously filed summary judgment motion, as well as the exhibits and deposition testimony considered in deciding that motion.
Since both parties had notice of the dual nature of the motion, and the trial court in effect granted the alternative summary judgment motion, the trial court did not err in its decision. Accordingly, Stanley's fifth assignment of error is hereby overruled.
Judgment affirmed.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Richard B. Reiling
Gary E. Becker
Brian J. O'Connell
HON. MICHAEL HALL